(No. 21035.

SUSAN KLEIN *et al. vs.* BARTHOLOMEW SCHOMMER *et al.* Appellees.—(SUSAN KLEIN, Appellant.)

*Opinion filed February 19, 1932—Rehearing denied April 8, 1932.*

DANIEL WEBSTER, (O. I. BINGAMAN, of counsel,) for appellant.

JOHNSON & SWANSTROM, (LUTHER D. SWANSTROM, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Susan Klein, the appellant, and Christian Schommer, filed a bill in the superior court of Cook county to contest the will of Anna Baumhardt, a sister of the appellant and an aunt of the other complainant. This appeal is from the decree entered upon the verdict of a jury finding the writing propounded to be the last will and testament of Anna Baumhardt, dismissing the bill for want of equity.

Anna Baumhardt, a widow, died on November 19, 1928, leaving no descendants. Her heirs were the complainants, two other sisters, a brother, and the descendants of a brother who was deceased. An instrument in writing purporting to be her will was admitted to probate on January 31, 1929, and letters testamentary were issued by the pro-

bate court of Cook county to Jacob Brachle, who was nominated as executor in the will. The instrument was typewritten on two sheets of ordinary legal typewriting paper and consisted of eight paragraphs, the first seven written on the first page and ending two inches from the bottom, and the eighth, which nominated the executor and requested that security be not required of him, written at the top of the second page, followed by the signature and an attesting clause purporting to be signed by three witnesses. The first page purported to bear the signature of Mrs. Baumhardt on the right margin. The first clause of the supposed will directed the payment of the testatrix's debts and funeral expenses. The second, that her home be occupied by Jacob Brachle as long as he might desire, and at any time he should desire to vacate it the testatrix gave, devised and bequeathed all her household goods, furniture, personal effects and jewelry to her niece Jessie Clark. The third and fourth paragraphs were bequests, respectively, of $1000 to the testatrix's sister Mary Thielen and of $3000 to her brother Nicholas Schommer. The fifth and sixth paragraphs, respectively, devised one lot of real estate to the testatrix's nephew, Arthur Schommer, and another to her niece Rosalind Schommer. The seventh paragraph devised all the residue of her estate to Jacob Brachle.

The sole ground of contest alleged in the bill is that the instrument was not properly executed and attested as required by the Statute of Wills, and it is specifically alleged that the first page of the instrument is a forgery and the signature is not the true signature of Anna Baumhardt.

The will was drawn by Miss Alfrieda M. Prestel, and she and Mrs. Mary McCarthy and George H. White signed as attesting witnesses. Miss Prestel had been a stenographer in law offices for twenty-five years and had been private secretary to Mr. Johnson, of the firm of Johnson & Swanstrom, from 1919 to 1927, and afterwards private secretary to Mr. Swanstrom. She had drawn many

wills without the assistance of an attorney. George H. White was an employee of the Chicago Title and Trust Company and lived in the same apartment at 1309 Newport avenue as Miss Prestel and her father, sister and brother. The testatrix's husband died in 1926 and she employed Johnson as her attorney, and Miss Prestel met her at that time. About the same time she also met Jacob Brachle. A month or so before the will was executed the testatrix had gone to the office of Johnson & Swanstrom and talked of making her will. On the morning of November 3 Brachle went to that office and asked for Johnson. Upon Miss Prestel's telling him that Johnson was not in, he told her that Mrs. Baumhardt wanted Johnson to go to her house and draw her will. He also told her that there was a typewriter at Mrs. Baumhardt's house. Miss Prestel worked in the office until one o'clock in the afternoon. She then took from her desk drawer several sheets of legal typewriter paper, which she rolled up and took with her and spent the afternoon shopping. She went home and about 7:30 or 8:00 o'clock went to Mrs. Baumhardt's home with White, whom she asked to go with her. Mr. and Mrs. Barnett and Brachle, who lived in Mrs. Baumhardt's house, were all at home. Miss Prestel testified that Mrs. Mc-Carthy was there, but Mrs. McCarthy testified that she came later. After a few minutes all the others went into the kitchen, leaving Mrs. Baumhardt and Miss Prestel alone. Mrs. Baumhardt then gave the instructions for the drawing of the will, which Miss Prestel made notes of in short-hand and in long-hand. Miss Prestel then went into the dining room to write the will on the typewriter. The machine was an old one. In writing the words "County" and "Illinois" Miss Prestel noticed that the letters "o," "l" and "n" were blurred, and she cleaned the type of those letters with a pin. Afterward on both sheets of the instrument the letter "o" is clear and distinct, showing that it had been cleaned. There is no apparent difference between the let-

ters "l" and "n" before cleaning and after cleaning. It is shown by expert testimony that both sheets were written on the same typewriter. After the will was written on the typewriter it was taken at about ten o'clock to the testatrix in the living room, where she sat in a rocking chair and signed it as it lay on the table, in the presence of the three witnesses, no one else being present. The witnesses then signed at her request and in her presence. The testatrix pushed her chair back a few inches from the table and about three minutes after she had signed the will Miss Prestel suggested that she sign the first sheet of the will also. The testatrix did so, not moving her chair back to the table but leaning forward and signing on the margin without a rest for her arm. Miss Prestel then fastened the two sheets of the will together, folded it up, put it in an envelope, which she sealed and on which she wrote Mrs. Baumhardt's name, and gave it to Mrs. Baumhardt, cautioning her to take good care of it. After the testatrix died the will was delivered to Swanstrom, still inclosed in the sealed envelope in the same condition in which it had been delivered to Mrs. Baumhardt. Miss Prestel testified that she fastened the two sheets together with a pin and with a clip and that the same pin and clip were on the will when it was delivered to Swanstrom. She is mistaken in this, for there were no pin-holes in either sheet. The first sheet had no water mark, while the second sheet had. There was a slight difference in the length of the two sheets. The signature on the margin of the first sheet is carelessly written and is such as might be expected where signed without a rest for the hand, while that on the second sheet is more carefully written. The first sheet is somewhat darker than the second, as if more soiled by exposure and handling. One witness testified as an expert that the two sheets were different paper stock. The witnesses who were present at the execution of the will agree in their testimony that Mrs. Baumhardt signed the second sheet of the will first,

and two or three minutes later, at the suggestion of Miss Prestel, made her signature on the first sheet while sitting a few inches from the table, reaching over at arm's length and signing without a rest for her arm. It would be natural to expect that there would be differences between the two signatures, and the testimony of the witnesses is not to be discredited solely because of such differences in the signature. The difference in the two sheets of paper is of itself of little importance, and may reasonably be explained by the fact that the stenographer gathered up the paper in a roll from loose sheets in her desk. If any change was made by the substitution of another sheet for the first sheet written it must have occurred after the witnesses left the house. The contestant's claim is that a new sheet was written with the same typewriter and substituted for the original, but no explanation is given of the fact that the "o's" in the first line and a half of the first sheet are blurred, but after the word "Illinois" in the second line, throughout both sheets of the will, the "o's" are clear and in no way blurred. If the second sheet had been written first the "o's" would have been blurred in the beginning of the second sheet and would have been clear on the first sheet.

The differences in the two signatures are obvious. Witnesses were called on both sides and expressed opinions favorable to the side which called them as to the genuineness of the signature on the first page. Experts were called on both sides and expressed opinions similarly favorable to the side which called them. A large number of checks bearing the genuine signature of Mrs. Baumhardt were introduced in evidence as standards of comparison. We will not express any opinion as to the weight of the evidence. It was sufficient to sustain the verdict if uncontradicted, and the verdict is not, in view of the whole evidence, manifestly contrary to the weight of the evidence. Therefore the court could not grant a new trial on the ground that the verdict was not sustained by the evidence.

The court erred, however, in instructing the jury as to the burden of proof. Instruction No. 11 given for the proponents was as follows:

"The court instructs the jury that if they believe that the proponents have established soundness of mind of Anna Baumhardt, deceased, at the time of the making of the will in question, by the oath of two or more of the subscribing witnesses to the will, and that the will was legally executed, acknowledged and witnessed, as explained in these instructions, then the proponents have made out a *prima facie* case; and thereupon the burden of proof is on the contestants to prove by a preponderance of the evidence that the will in question is invalid by reason of forgery, fraud or any other cause, as alleged by the contestants; and if the evidence is left evenly balanced, the verdict should be in favor of the validity of the will."

The burden of proof in a will contest as to the execution of the will is always on the proponent and it never shifts. (*Sellers* v. *Kincaid*, 303 Ill. 216; *Donovan* v. *St. Joseph's Home*, 295 id. 125.) It was error to give this instruction, and for the same reason to give instruction No. 14, which states the same rule. The court gave an instruction for the contestants (No. 4) which stated the correct rule: "The court instructs the jury that where a will is propounded for probate and is attacked as a forgery, the burden of proving its genuineness is upon the proponent." This instruction was inconsistent with those given for the proponent, and the jury therefore had no definite rule to follow.

Instruction No. 2 given on behalf of the proponents, after stating the right of the owner of property, of lawful age and having capacity to attend to her ordinary business, to dispose of it either by deed or by will as she may choose, and, if she chooses, to disinherit some of her heirs and to leave her property to other heirs or to strangers, and that such disposition of her property is valid, whether

reasonable or unreasonable, just or unjust, and the reasonableness or justice or impropriety of the will are not questions for the jury to pass upon, continued: "If, therefore, you believe, from the evidence, that when Anna Baumhardt executed the paper in evidence purporting to be her last will and testament, she had mental capacity enough to know and understand the business in which she was then engaged, then the jury should find the paper in evidence to be the will of said Anna Baumhardt." This instruction assumed that Anna Baumhardt executed the paper in evidence purporting to be her last will and testament, which was the very issue which the jury was to try, and submitted to the jury the question whether she had mental capacity to know and understand the business in which she was then engaged, which was not an issue in the case at all.

Instruction No. 1 given for the proponents informed the jury that the law does not require the testator or testatrix to sign his or her name on every page, or on the margin of the page or pages, in order to make the will valid. However true this may be as an abstract proposition of law, in view of the issue in this case and the evidence the instruction was misleading, for the first page of the will involved here could not be valid unless it bore the genuine signature of the testatrix, and if that page of the will was not valid there was no valid will.

Refused instruction No. 2 asked by the contestants stated that the burden which rests upon the proponents to prove execution includes the burden of showing that the signatures on both sheets of proponents' exhibit No. 1 were the signatures of Anna Baumhardt. Under the issue and the evidence in this case this was a correct statement and the instruction should have been given.

The eighth, ninth, tenth and twelfth instructions asked by the contestants and refused, stated in varying language that if the first sheet of the instrument tendered was a substituted sheet and not a part of the testatrix's will when

she executed it, the tendered instrument was not her will. This proposition was correct and should have been given to the jury.

For the errors which have been mentioned the decree is reversed and the cause is remanded to the superior court of Cook county.

*Reversed and remanded.*