# JUNE TERM, 1917.*

## WILLIAMS v. WILLIAMS.

1. DEEDS—LEASES—CANCELLATION OF INSTRUMENTS—UNDUE IN-FLUENCE—BURDEN OF PROOF.

In a suit by an aged father against his son and daughter-in-law to set aside a deed of property to them subject to a life lease, in consideration of maintenance and support, the burden is on defendants to show that the agreement with the father is not to his disadvantage, is fair to him and of his own free will; that no advantage has been taken by them because of his age, mental condition, or confidence in them and that they have fulfilled the terms of their agreement, in letter and spirit, so far as per-mitted by him, and are ready and willing to continue so to do.[1]

2. SAME—EVIDENCE—SUFFICIENCY.

Evidence *held*, sufficient to show that plaintiff had not made out a case and that the contract was yet in force.

3. EQUITY — DEEDS — LEASES — CHANGED CONDITIONS — DUTY OF COURT.

If, as the result of unkind feeling developed between the parties to a deed by an aged father to his son and daughter-in-law in consideration of care and support on the prem-ises in which the father retains a life lease, the father cannot agreeably and contentedly live with the children in the friendly relations contemplated by their agree-ment, it is within the power of the chancery court to subsequently require other suitable provisions to be made for him in other congenial surroundings by them or at their expense.

Appeal from Calhoun; North, J. Submitted April

*Continued from Vol. 197.

[1] On the question of undue influence in conveyance or transfer of property in consideration of support of the grantor or third person, see note in 52 L. R. A. (N. S.) 476.

10, 1917. (Docket No. 118.)   Decided September 27, 1917.

Bill by Charles H. Williams against Fred N. Williams and another to set aside a deed. From a decree dismissing the bill, plaintiff appeals. Modified and affirmed.

*Edward R. Loud* (*J. M. Hatch,* of counsel), for plaintiff.

*Stewart & Jacobs,* for defendants.

STEERE, J.   On March 18, 1914, plaintiff conveyed to defendants, who are his son and daughter-in-law, a house and lot on Walnut street, in the city of Albion. The consideration was stated to be $1, with the following provision:

"This deed being made subject to a life lease made and executed by the said parties of the second part to the said party of the first part, for and during his natural lifetime, conditioned for first party's maintenance and support in sickness and in health so long as he shall live."

Contemporaneous with this deed defendants gave to plaintiff a life lease of the property containing a lengthy agreement to support and care for him during the remainder of his life, stating in part that the deed of the property from him to them of that date was given in consideration of such support and maintenance, which meant—

"his comfortable board, washing, lodging, and kindly treatment at all times, and care, nursing, and medical treatment in times of his sickness and distress as his care shall reasonably appear to demand; * * * the intent being that the parties to these presents shall use and occupy the premises above described for their home as one family in that peace, harmony, and reciprocal courtesy towards one another that should always exist in families of respectability."

The life lease further provided that, if defendants failed to keep their agreement in the particulars before stated, they should at once vacate and reconvey the premises to plaintiff, but by their—

"keeping and fulfilling the terms, covenants, promises, and agreements hereinabove set forth and expressed this lease and warranty deed of said above-described land and premises to first parties shall remain and be in full force and virtue."

About a year after the deed was given plaintiff began this suit to set it aside and obtain a reconveyance, charging, in substance, that the deed was obtained from him by fraud and undue influence, that defendants had failed to live up to their agreement in various specified particulars, that he was dissatisfied, and it was understood between the parties that if they disagreed or he became dissatisfied at any time the property would be reconveyed to him.

Defendants by their answer made total denial of any solicitation, fraud, or influence on their part, undue or otherwise, to induce plaintiff to. give the deed, deny there was any misunderstanding or misrepresentation as to the contents of the instruments then executed, allege that they were drawn under plaintiff's direction, on his initiative, by his attorney, and accepted by them on his solicitation; that they were at the time living in their own home, where plaintiff lived with and was cared for by them, but in response to his request and proposal they accepted the deed and assumed the obligations, removing with him to his former home, to which he was then anxious to return, and there kindly supported and cared for him in the manner specified in their agreement, where he remained with them apparently satisfied and contented until persuaded to leave his old home and them and induced to bring this suit by the jealous machinations of other relatives, who were seeking personal benefit;

and that defendants are ready and willing, as they always have been and have offered since he left, to receive and care for him according to their agreement at any and all times he will return and make his home with them.

Plaintiff is an old man about 77 years of age, somewhat hard of hearing, a veteran of the Civil War, and a retired farmer. Some years before this deed was given he bought this house and lot on Walnut street for $1,200, and had lived there with his old wife since leaving the farm. When this case was heard the varying testimony indicated a then value of the property from $2,000 to $2,500. When plaintiff deeded it to defendants, his wife had recently died. Prior to her death the old couple had been living in this home together for some time alone, their five living children being mature adults and away for themselves. Defendant Fred N., who was their youngest child, was then a married man about 30 years of age, and had acquired a home of his own in Albion where he was living with his family. After his wife's death, which left plaintiff alone with no one to stay with and care for him in his former home, he went to live with defendants, but was anxious to get back to the old home, where his wife died, and importuned defendants to leave their home and move to his, where he could yet live with them. He admits that he desired and proposed this, but claims that Fred refused to go unless the property was deeded to him. This they deny, and claim both were his proposals; that he was welcome and well cared for in their home, and they only consented to comply with his solicitations after he had the papers drawn up without their knowledge, and requested them to join him in executing them.

That the presumptions are against transactions of this nature and they are critically scrutinized by the courts, putting the burden of proof upon those seek-

ing to sustain them, requires no citation of authority. In view of plaintiff's age, their kinship, and the confidential relations shown to exist between them at the time, it was incumbent upon defendants to show that the agreement with their father was not to his disadvantage, was fair to him and of his own free will, that no advantage was taken by them of his age, mental condition, or confidence in them, that they have fulfilled the terms of their agreement, in letter and spirit, so far as permitted by him, and are ready and willing to continue so to do.

The testimony was heard in open court. After hearing and seeing the parties and their witnesses, the court dismissed plaintiff's bill, saying in part:

"But none the less the proof in this case satisfies me that the arrangement between the parties to this suit was entered into at the solicitation of the plaintiff and consummated by an attorney who took special pains to safeguard the rights of the plaintiff. The plaintiff is well advanced in years and is enfeebled to some extent both physically and mentally; but no other conclusion can be arrived at from the proof in this case but that the transaction into which he entered was carefully explained to him; that he entered into it knowingly and deliberately, and without any undue influence. And further than this the decided preponderance of the evidence fully satisfies me that the defendants in this case have performed the conditions in consequence of which the conveyance was given and still stand ready to."

Of the attorney's participation in the transaction, to which the court refers, it was shown that some days before these papers were drawn and executed plaintiff went, without defendants' knowledge, to the office of Levi S. Warren, of Albion, a reputable attorney of long experience whom he had known for many years, and who had been his legal adviser, telling him what he proposed to do with the property and requesting that a deed be prepared from him to his son, who was

the only child he could depend upon. The attorney discussed it with him, suggested that such a course often proved unsatisfactory, advising him to wait and think it over, and when he reached a decision he might come again and let him know. Warren testified that, having thus put him off, he took it upon himself to see two of plaintiff's old neighbors and make inquiry as to the character of Fred and his wife before anything further was done; that plaintiff came to his office again on March 18th, and said he had decided to have the papers made out; that witness then made out the deed and life lease, the latter being upon his own initiative, and read them over to plaintiff, who expressed himself as satisfied; that, while plaintiff was hard of hearing, witness had done quite a bit of business for him, and could make him hear, which he took pains to do; that witness had no previous talks with Fred about this matter, and when the parties came to his office to execute the papers he read them over, but there was little conversation at that time; that he did not represent defendants, and had never done any business for them.

When the execution of these papers became known to plaintiff's other children, a daughter, Mrs. Kimmel, began proceedings in the probate court for appointment of a guardian over her father, because of his mental incompetency, for the purpose of having this deed set aside. The matter was tried out upon its merits in probate court, and plaintiff's competency was vindicated, and the petition ordered dismissed. His testimony at that time as to how he liked it and was treated at defendants' home does not agree with that given by him in this case. Mrs. Kimmel appealed from the order of dismissal, but later harmonized the strained relations with plaintiff resulting from the resented attack on his mentality, and her appeal was dismissed. Her subsequent ardent manifestations of

affection for her father led him to "wonder what was in the wind," and it is urged with some supporting circumstances that this litigation is the answer.

Plaintiff resided with defendants, as they claim and others with some knowledge testify, well cared for, kindly treated, and apparently contented until about October 14, 1914, when he left, without any notice to, disagreement with, or demand upon defendants, going to the home of a daughter, Mrs. Callaghan, where he remained up to the time of the trial of this case. About two weeks after he left he called upon defendants, accompanied by Mrs. Callaghan, and notified them, with his daughter's assistance, that he had come over to settle and wanted them to get out of there. Defendants and a witness named Sears, who came in at Fred's request, testify that the latter replied there was nothing to settle, but his old home was open to plaintiff, and he was welcome to return and live with them at any time. Plaintiff and his daughter deny this invitation.

The only witness to any breach of the contract, or discourteous treatment, is plaintiff himself. He stated that he left because he was dissatisfied and thought it best and thought he had reason for doing so; that he did not talk with them about it; that Fred never spoke disrespectfully to him, but the wife did at times; that he did not know as he had any fault to find with her manner towards him, but she was crabbed at times, mostly about the baby which he was fond of, and she found fault with his manner of handling it. To this he added her objection to his smoking in the house and locking the place when she left the premises, which were the only definite matters of which he made complaint. Defendants deny any unkind treatment in these particulars, or occasion for affront on his part, testify that he smoked in the house as he pleased without any objection by either of them,

and that Fred sometimes furnished cigars and smoked with him; that when the rest were away and the wife left the house she would lock the door and put the key under a mat where the others could get it if they returned during her absence, of which he was fully advised (but which he denies), and that the matter of handling the baby when he played with it was only an ordinary caution, and request by the mother that he be careful about putting his hand on its head. A witness named Jennie Mulvaney, who lived in the family five weeks, during a period before and after the baby was born, testified that plaintiff smoked around the house when and where he pleased, and Mrs. Williams made no objection; that he was a quiet man and made no trouble; that defendants were very agreeable to him; they got along nicely and everything seemed pleasant.

While plaintiff generalized beyond the three matters mentioned, to the effect that it was not pleasant for him there, and he was dissatisfied, intimating that he got a "hunch," that "they didn't seem to appreciate my company," etc., after a careful examination of this record we discover no tangible facts which justify disturbing the conclusions reached by the trial court, finding plaintiff had not made out a case entitling him to cancellation of his deed, and that the contract between the parties is yet in force and binding. By it the obligation yet remains upon defendants to provide for and maintain plaintiff according to its letter and spirit.

If, as the result of unkind feeling developed between the parties in this controversy, the situation is such that plaintiff cannot agreeably and contentedly live with defendants in the friendly relations contemplated in their agreement, it is within the power of the chancery court to require other reasonable provisions be made for him in congenial surroundings elsewhere,

by them or at their expense. *Marsac* v. *DeFord,* 184 Mich. 389 (151 N. W. 582). The decree should leave that question open for supplemental proceedings if either party desires to be heard upon it.

With such modification the decree will stand af-firmed, with costs to defendants.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred.