RUNYON *v.* URICH.

1. DEEDS—CANCELLATION OF INSTRUMENTS—BURDEN OF PROOF.

In aged mother's suit against daughter and son-in-law to set aside deed to them of 80-acre farm in which she reserved a life estate, wherein it appears that the minds of the parties never met relative to their respective rights, duties and obligations in connection with their joint occupancy of the farm, the burden was on defendants to prove that their arrangement with her was fair and was made of her own free will, that they had not taken advantage of her age or confidence in them and that they had fulfilled the terms of their agreement under which the deed was executed.

2. APPEAL AND ERROR—CANCELLATION OF INSTRUMENTS—RECORD—EQUITY.

*De novo* review of record in suit by aged mother against daughter and son-in-law to set aside deed *held*, to show defendants failed to sustain burden of showing agreement for caring for plaintiff was fair and made of her own free will, that defendants had not taken advantage of plaintiff's age or confidence in them, that the minds of the parties ever met, and showed there was a failure of consideration for the deed and that plaintiff was equitably entitled to cancellation thereof.

Appeal from Barry; Souter (Dale), J., presiding. Submitted April 9, 1946. (Docket No. 70, Calendar No. 42,990.) Decided June 3, 1946.

Bill by Esther C. Runyon against Roscoe E. Urich and wife to set aside and cancel a deed of real estate. Decree for plaintiff. Defendants appeal. Affirmed.

*Adelbert Cortright,* for plaintiff.

*Cobb & Nielsen,* for defendants.

STARR, J. Plaintiff is a widow over 80 years of age. She is the mother of defendant Mary Ann Urich, who is the wife of defendant Roscoe E. Urich. For many years plaintiff and her husband had lived on a farm in Indiana. They had accumulated some property and apparently were in quite comfortable circumstances. In 1937 they moved to Barry county, Michigan, and purchased a farm on which they made their home. Title to this farm was taken in the name of the husband, and when he died intestate in 1940, plaintiff inherited only a one-third interest. She thereafter purchased the interests of the other heirs and lived alone on the farm until about January 1, 1943, when defendants moved in with her. On February 2d of that year plaintiff executed a warranty deed conveying the farm to defendants, but reserving a life estate for herself. The deed provided in part:

"Party of the first part, Esther C. Runyon (plaintiff), hereby expressly reserves for herself a life estate in said premises except that second parties (defendants) and their children may live in and occupy such parts or portions of the dwelling house located on said premises as may be necessary for their needs for as long a time as my life lease in the said premises may be."

Trouble soon arose between the parties, and in November, 1943, plaintiff began the present suit to obtain cancellation of the above-mentioned deed to defendants. In her bill of complaint and amended bills she alleged in substance that she was induced to execute the deed by the false representations of defendants; that after defendants had moved to the

farm, they abused her and made her life miserable;
and that she did not know or understand the effect
of the deed which she signed. She further alleged:

"That by means of their constant attention and
their pretensions of interest in her welfare, defend-
ants succeeded in gaining plaintiff's confidence; that
they, the said defendants, solicited plaintiff to deed
her farm to them and faithfully agreed and promised
that if she would do so, they would take good care of
her as long as she lived, would see that none of her
other children got her money or property away from
her, would provide her with a good home and kindly
and considerate care and attention as long as she
lived, and would pay her the sum of $100 for spend-
ing money each and every year as long as she lived."

Defendants answered, denying plaintiff's right to
the relief sought and alleging in substance that they
moved to the farm at her request and that the deed
was prepared in accordance with her instructions.
The case was tried, and a decree was entered can-
celing the deed and ordering defendants to vacate
the farm premises within 30 days. The decree also
determined defendants to be the owners of the furni-
ture and stock and a house trailer which they had
brought to the farm. Defendants appeal from this
decree.

This case presents the sad situation which usually
arises when an aged parent conveys property to a
son or daughter under an indefinite and uncertain
oral agreement regarding support of the parent.
Plaintiff testified in part:

"They (defendants) said they couldn't rest with
me over there living alone, and that they wanted to
come and see after me, and take care of me, and
they said that they would take care of me and give
me $100 a year for spending money, if I would let
them live there,—and they never paid me anything.
* * *

"And the contract was that if we didn't get along, they was to move out and give peaceful possession at that time.    *    *    *

"I furnished most of the stuff. I had three cows, —that is at this time. I sold cream and made what butter we could all use. They had all the milk, butter and cream, and eggs, they could use.

"On or about the 1st of August, they just got to abusing me so and she said,—I am sorry to say it, but I have to tell you that she said, 'By God, she owned the farm, and that she would do as she damn pleased with it.'    *    *    *.

"Besides the things they said they throwed my things out of the house, locked me out,    *    *    *    just about all of my furniture, my kitchen cabinet is throwed out down there, and my little table, sideboard, and everything.    *    *    *

"I went up one morning (to the house on the farm)    *    *    *    and she seen me coming and she slammed the door in my face, locked me out.    *    *    *

"When they were there sometimes they threatened me. They would kill me if I went in the house any more.    *    *    *

"I walked out to do my milking, and feed my chickens, and do my chores, and she (defendant Mary Urich) would come out and tackle me.    *    *    *

"She didn't take hold of me, but she abused me, called me everything that she could lay her tongue to."

Plaintiff's testimony that defendants had agreed to pay her $100 a year was corroborated by that of her grandson. It appears that defendants lived in the house on the farm, and that by mutual arrangement plaintiff lived in a house trailer which defendants had moved on to the farm. However, she retained a room in the house to which she had a key and in which she stored some of her personal effects.

The daughter, defendant Mary Urich, did not testify. Defendant Roscoe Urich testified in substance that plaintiff had requested them to move to the

farm and that the deed was prepared in accordance with her instructions. He denied plaintiff's claim that defendants had agreed to pay her $100 a year, and his testimony in this regard was corroborated by that of the attorney who prepared the deed. Urich also testified that plaintiff was abusive, threatened to have defendants arrested, and threatened his minor daughter with physical injury. He further testified that he had done work for plaintiff on the farm; that he had hauled feed for the cattle and also hauled fuel and lumber; that he had made several trips to Indiana for plaintiff; and that he had not been paid for his work and services. It should be noted that defendants did not ask for an accounting or other affirmative relief.

It would be purposeless to discuss further the bickering and quarreling between these parties or the conflicting testimony relative to their oral agreements, business dealings, and personal conduct. It appears that both plaintiff and her daughter possessed rather violent dispositions and that they were without inhibitions in the expression of their respective opinions. However, defendants entered into the transaction fully cognizant that, despite her age, plaintiff was an energetic and strong-willed person, and the record indicates that they were rather intolerant of her eccentricities, which they were bound to have anticipated.

From the conflicting testimony it is apparent that the minds of the parties never met relative to their respective rights, duties, and obligations in connection with their joint occupancy of the farm premises. In view of plaintiff's age and the relationship of the parties, the burden was upon defendants to prove that their arrangement with her was fair and was made of her own free will; that they had not taken advantage of her age or confidence in them; and that

they had fulfilled the terms of their agreement under which the deed was executed. The case of *Williams* v. *Williams,* 198 Mich. 1, involved a situation comparable to that now before us. In that case a father 77 years of age sought to set aside a deed given to his son and daughter-in-law. We there said (pp. 4, 5):

"That the presumptions are against transactions of this nature and they are critically scrutinized by the courts, putting the burden of proof upon those seeking to sustain them, requires no citation of authority. In view of plaintiff's age, their kinship, and the confidential relations shown to exist between them at the time, it was incumbent upon defendants to show that the agreement with their father was not to his disadvantage, was fair to him and of his own free will, that no advantage was taken by them of his age, mental condition, or confidence in them, that they have fulfilled the terms of their agreement, in letter and spirit, so far as permitted by him, and are ready and willing to continue to do so."

See, also, *Ferguson* v. *Ferguson,* 287 Mich. 714; *Lewandowski* v. *Nadolny,* 214 Mich. 350; *Lockwood* v. *Lockwood,* 124 Mich. 627; *Crips* v. *Towsley,* 73 Mich. 395.

Our *de novo* review of the record in the present case convinces us that defendants failed to sustain the burden of proof incumbent on them; that the minds of the parties never met; that there was a failure of consideration for plaintiff's deed; and that she was equitably entitled to cancellation of the deed. The trial judge saw and heard the parties, and we are satisfied that he properly determined their respective rights. Other questions presented do not require determination.

The decree of the trial court is affirmed, with the modification that if defendants are still in possession of the house and farm premises, they shall vacate the

same within 30 days after the filing of this opinion. The case is remanded for such further action as may be necessary. Plaintiff may recover costs of both courts.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, REID, and NORTH, JJ., concurred. BUSHNELL, J., took no part in the decision of this case.