## DISENROTH *v.* JENNINGS.

1. ACCOUNTING—PLEADING—EVIDENCE.

Plaintiff was entitled to recover from defendant son for money loaned him and for money received by him in trust for her with interest at 5% from date of receipt of such sums, where such items were pleaded in her bill for accounting and other relief and no motion to strike had been made, the trial court not having passed on the merits of such claims and although supported by direct testimony of plaintiff were not directly denied by defendant.

2. SAME—TRUST FUNDS—BURDEN OF PROOF.

Defendant son who had received a sum of money in trust for plaintiff mother became obligated to account to her therefor in equity and burden of proof rested on him to prove he had paid it to her or that he was entitled to certain credits therefrom for expenses incurred by him in its procurement.

3. CONTRACTS—ACCOUNTING—BURDEN OF PROOF—FAILURE OF CONSIDERATION—LACK OF PERFORMANCE.

The plaintiff in a suit for cancellation of certain conveyances, for an accounting and other relief based on defendant's agreement to make payments to her and undertake payment of certain debts, had the burden of establishing failure of consideration or lack of performance by defendant.

4. SAME—ACCOUNTING—BREACH OF CONTRACT—EVIDENCE.

Trial court's finding that plaintiff mother had failed to establish in her suit for cancellation of conveyances and for an account-

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 1 Am Jur, Accounts and Accounting §§ 60, 61.
[2] 54 Am Jur, Trusts § 509.
[2] Necessity of proof by trustee that charges or expenses for which he claims credit upon an accounting were proper disbursements. 13 ALR 364.
[3] 20 Am Jur, Evidence §§ 147, 148.
[4, 7] 12 Am Jur, Contracts § 327 *et seq.*

ing that defendant son and his wife had made living in their home so disagreeable for plaintiff as to amount to a breach of defendants' written undertaking to permit her to live in their home, is not disturbed.

5. ACCOUNTING—FINDING OF TRIAL COURT—WEEKLY PAYMENTS TO MOTHER—EVIDENCE.

Plaintiff, mother of defendant son, was not entitled, under record presented in suit for accounting and other relief, to complain of trial court's finding that under written contract entered into in 1935, there was due her $2 weekly only since 1940.

6. EQUITY—PERFORMANCE OF CONTRACT TO PROVIDE HOME FOR DEFENDANT'S MOTHER.

It is within the power of a court of chancery to compel defendant obligor under a written contract to make reasonable provision for plaintiff, his mother, in congenial surroundings in the event that an attempt to get along in the future with her in their home fails because of their unkind and improper treatment of her.

7. CONTRACTS—OBLIGATION TO FURNISH PARENT WITH HOME.

Defendants, husband and wife, obligors under written contract to furnish his mother with a home for balance of her life may not be required to compensate her for the cost of occupying a different home after she had left theirs, where she failed to sustain her burden of showing that their treatment of her drove her from the home.

8. SAME—OBLIGATION TO FURNISH PARENT WITH FOOD.

Plaintiff mother *held*, entitled to cost of her food from date she left her son's home and continuously hereafter regardless of where she lives, where provision obligating him to pay therefor is not dependent upon her living at his home.

Appeal from Ingham; Coash (Louis E.), J. Submitted October 12, 1955. (Docket No. 83, Calendar No. 46,614.) Decided December 28, 1955.

Bill by Iva M. Disenroth against Frederick J. Jennings and Lillian Jennings for cancellation of certain deeds, for accounting and for other relief. Decree granting plaintiff partial relief. Plaintiff appeals. Reversed, in part, and remanded for the purpose of providing additional relief.

*Gregg, Glassen, Parr & Rhead,* for plaintiff.

*Roy T. Conley,* for defendant.

DETHMERS, J. In 1932 plaintiff, after a divorce, found herself owner of the vendee's interest in a contract for the purchase of a store building and business, which was in financial straits and which she was not qualified by experience to operate. She also owned a house and lot and household furnishings. Most of what she possessed was heavily encumbered and she owed business and personal debts, back taxes and other obligations. Her business and affairs suffered from the effects of the depression era, as well as from other causes. Under an arrangement, the provisions of which are not made clear by the record, her son and his wife, the defendants herein, and their family came up from Ohio where they were residing, moved in with plaintiff, and the son, hereinafter called defendant, undertook operation of the store. In 1935 plaintiff assigned to defendant her interest in the contract on the store and conveyed to him all her interest in the store, merchandise and business and also title to her household furnishings and to the house and lot, reserving a life estate in the house. On the same date they entered into a written contract, by the terms of which plaintiff agreed to make the above transfers and to permit defendant and his family to live in the home. In consideration thereof defendant agreed to permit plaintiff to live in the home with him and his family, to furnish her with necessary food and medical care, to pay her $2 per week so long as she lived and to assume and pay the balance on the store contract, mortgages on real estate and furnishings, taxes and all the debts of the business and of plaintiff.

Plaintiff has made no complaint that defendant failed to provide her with a home prior to 1952, ap-

parently because she lived there occasionally when she desired, but most of the time preferred to live elsewhere because of opportunities to be gainfully employed as housekeeper or practical nurse in the homes of others and because of an intervening period of married life. In March of 1952, however, she returned to the home with the intention of remaining there permanently. Disagreements between the parties ensued, as a result of which she left on November 1, 1952. This suit followed, plaintiff seeking cancellation of the mentioned conveyances and praying that she be decreed to be owner of the mentioned properties, that defendant account to her for merchandise in the store delivered by her to him in 1935, and for repayment of money loaned and advanced by her to defendant from time to time and, particularly, of the proceeds from the sale of real estate, other than that above mentioned, sold by defendant for plaintiff in 1947, for the return of her private papers and for payment of all amounts found to be due her from defendant, including the $2-weekly payments agreed by defendant to be paid plaintiff under the contract.

Decree entered denying plaintiff the relief prayed for except that defendants were required to pay plaintiff the $2-weekly payments under the contract for a period running from January 1, 1940, to date of decree. Plaintiff appeals.

With respect to a $600 loan, which plaintiff testified she made to defendant 7 years before date of trial, to be repaid whenever she needed it, and $1,-622.53 proceeds derived from a sale by defendant of plaintiff's real estate and admittedly received by defendant in trust for her on June 25, 1947, the trial court took the position that plaintiff's claims therefor could not be considered in this suit because they did not relate to the 1935 contract, which the court considered to be the basis of this suit. These 2 items

were pleaded in plaintiff's bill of complaint and payment thereof prayed for. Defendants made no motion to strike the allegations or prayer for relief in that connection from the bill, but, on the contrary, denied them in their answer and offered a defense against them. The decree denied the relief prayed with respect thereto. Under the circumstances, we think the court erred in failing to pass on the merits of these 2 claims. *Burgess* v. *Jackson Circuit Judge,* 249 Mich 558, and cases therein cited. In response to plaintiff's direct testimony that she had made the $600 loan to defendant, he testified that he would not say that it was not true, but that, as far as he knew, she was incorrect. On such state of the record, we believe the decree should provide for payment by defendant to plaintiff of the said sum of $600 with interest thereon at 5% per annum from and after November 9, 1946, that being 7 years prior to date of commencement of trial. As for the $1,622.53 item, inasmuch as it came into defendant's hands under a trust relationship plaintiff was entitled to an accounting in equity. *Cochrane* v. *Adams,* 50 Mich 16; *Darrah* v. *Boyce,* 62 Mich 480. The sum admittedly having been received by defendant, the burden of proof rested on him to prove that he paid it to plaintiff or that he was entitled to certain credits therefrom for expenses incurred by him in its procurement. *Thatcher* v. *Hayes,* 54 Mich 184. He testified that there were such expenses but he did not know their amount. He also testified that he had deposited the balance, after deduction of expenses, in plaintiff's bank account. That testimony was refuted by the records of the bank. He failed to sustain the burden of proof resting on him in this connection. Under such unsatisfactory state of the record the decree should have required defendant to pay plaintiff the $1,622.53 with interest at 5% per annum since date of its receipt on June 25, 1947.

With respect to plaintiff's prayer for cancellation of the assignments and conveyances made by her to defendant she is not entitled to prevail. She contends that the burden of proof is on defendant to prove that they were obtained fairly and without taking advantage of plaintiff's age or mental condition and that defendant has fulfilled the terms of the agreement and is ready and willing to continue to do so, citing *Williams* v. *Williams,* 198 Mich 1. The case is not in point, but is distinguishable because here plaintiff, at age 57, while possessed of full physical and mental vigor, conveyed to defendant what the trial court viewed, not improperly, as distressed property, in exchange for which defendant not only agreed to care for plaintiff in certain respects but to operate the store business, pull it out of financial straits, and pay mortgages, taxes, and a number of other debts, all of which the record conclusively establishes that he did. The burden was on plaintiff, as in any other ordinary action on contract, to establish failure of consideration or lack of performance by defendant. We are not inclined to disagree with the trial court's finding that plaintiff failed to establish that defendants made living in their home so disagreeable for plaintiff as to amount to a breach of defendants' undertaking in that respect. Insofar as the $2-weekly payment under the contract is concerned, the plaintiff so far failed to sustain the burden of proof resting upon her in that regard that she is in no position to complain of the court's finding that the payments due her in that connection date back only to January 1, 1940.

Defendants stated on trial that plaintiff is welcome to return to the home and live with them. It may be that the parties will forget past differences and decide to live together. If, on the basis of an attempt thereat in the future, it is made clear that

they cannot get along together and that plaintiff cannot live with defendants with a fair degree of contentment because of defendants' unkind and improper treatment of her, then, as held in *Williams* v. *Williams, supra,* it will be within the power of a court of chancery to require defendant, at his own expense, to make other reasonable provisions for plaintiff in congenial surroundings; and the decree should leave that question open for supplemental proceedings if either party desires to be heard upon it in the future. The decree also should have provided for return to plaintiff of all her papers held by defendants.

Except for the matter of the $2-weekly payments plaintiff makes no complaint of defendant's actions or failure to act before March of 1952 nor does she pray for relief in that respect. On that date she moved in with defendants and they provided her with a home and necessary food as provided in the agreement. Plaintiff's complaint is directed to defendants' conduct while she lived with them during the period from March until November 1, 1952, which she says was so harsh and unkind that, in effect, it drove her from the home. Had she proved the latter, it would have been proper for the court, under the holding in *Williams* v. *Williams, supra,* to require defendant to furnish or pay plaintiff the cost of living and eating elsewhere than in the home with defendants. Because plaintiff failed in her proofs in this respect, defendants ought not to be required to compensate her for the cost of occupying a different home since November 1, 1952. A perusal of the contract discloses, however, that defendant's obligation to furnish plaintiff with necessary food is in no way related to, or conditioned on, her living in the home with defendants. The provisions for those 2 benefits are to be found in separate paragraphs. It follows that defendant is obligated to

pay plaintiff for the cost of her food since that date and to continue to furnish plaintiff with necessary food, or the cost thereof, for the remainder of her life regardless of where she lives. Because no determination was made below with respect to such cost for food from November 1, 1952, to date of hearing, the cause should be remanded for that purpose.

Decree below is vacated and set aside, and the cause remanded for the purpose above indicated and for the entry of decree in accord herewith. Costs to plaintiff.

CARR, C. J., and BUTZEL, SMITH, SHARPE, BOYLES, REID, and KELLY, JJ., concurred.