STRAITH *v.* STRAITH.

1. DEEDS—PRESUMPTION AGAINST VALIDITY—EVIDENCE OF REBUTTAL.

   The presumption against the validity of transactions whereby
   elderly parents in ill health convey property to a child who
   agrees to care for them for the rest of the life of the parents is
   rebuttable and the burden of sustaining their validity is on
   the grantees by a showing that the agreement was not to
   the parents' disadvantage nor unfair to them and that it
   was of their own free will and not because of any advantage
   taken because of age, mental condition or confidence in the
   child and that the latter has fulfilled his agreement so far as
   permitted or stands ready and willing to continue to do so.

2. APPEAL AND ERROR—TRIAL COURT'S WRONG REASON FOR RIGHT
   RESULT.

   The decision of the trial court that defendant son and his
   wife should not be required to reconvey property to his
   mother which she and his father had conveyed to defendants
   in return for their promise of care and protection of the
   property because burden of proof rested on surviving mother
   to show invalidity of deed involved is not disturbed, where
   presumption against invalidity had been overcome by defend-
   ants' proofs.

3. DEEDS—UNDUE INFLUENCE—BURDEN OF PROOF.

   The burden of proof to show undue influence in the execution
   of a deed does not shift from the plaintiff to defendant.

4. EVIDENCE—PRESUMPTIONS—REBUTTAL.

   A rebuttable or prima facie presumption has no weight as evi-
   dence, as it merely serves to establish a prima-facie case, but if

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 16 Am Jur, Deeds § 393.
[3] 16 Am Jur, Deeds § 375.
[4] 20 Am Jur, Evidence § 157 *et seq.*
[5] 16 Am Jur, Deeds § 61.
[8] 16 Am Jur, Deeds § 452.

challenged by rebutting evidence, the presumption cannot be weighed against the evidence, it then being necessary to introduce supporting evidence, there then being no evidentiary force to the presumption itself.

5. DEEDS—CONSIDERATION—PARENT AND CHILD—LOVE AND AFFECTION.

Love and affection between parent and child constitutes adequate consideration for a deed.

6. SAME—UNDUE INFLUENCE—FRAUD.

Record in mother's suit to set aside deed by which she and her late husband had conveyed some of their property to their only son and his wife *held*, not to disclose any undue influence or fraud on the part of the grantees.

7. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW.

The Supreme Court hears chancery cases *de novo*, on the record presented.

8. SAME—SETTING ASIDE DEEDS—FINDING OF TRIAL COURT.

Finding of trial court for defendant son and his wife in mother's suit to set aside deed of summer cottage is not disturbed, since trial court had heard witnesses testify, observed their demeanor and was in a better position to determine their credibility and record does not indicate that a different conclusion should have been reached.

Appeal from Wayne; Bowles (George E.), J. Submitted October 15, 1958. (Docket No. 64, Calendar No. 47,604.) Decided January 12, 1959.

Bill by Hazel C. Straith against Marvin R. Straith and Geraldine Straith to set aside deed and for other relief. Decree granting partial relief but denying prayer to set aside conveyance. Plaintiff appeals. Affirmed.

*David S. Levi,* for plaintiff.

*William H. Hague* (*Meyer Weisenfeld,* of counsel), for defendants.

KAVANAGH, J. This is an appeal from a decree denying plaintiff's prayer to have a deed set aside on

the theory that it was obtained by undue influence, lack of consideration, and fraud.

In 1954 plaintiff and her now deceased husband, Ovid Straith, a retired inspector of the Detroit police department, were the owners of a house and lot on Forrer avenue in the city of Detroit, a cottage at Portage lake, Michigan, valued, according to plaintiff's pleadings, at $30,000, and 2 bank accounts with balances aggregating approximately $3,000. Mr. Straith was receiving social security benefits and was approximately 70 years of age. Mrs. Straith was approximately 66 years of age.

On April 9, 1954, Ovid and Hazel C. Straith conveyed by deed to their only child, Marvin, and his wife, Geraldine, the Portage lake property, reserving unto themselves a life estate. Subsequently Mr. Straith, who had been afflicted with Parkinson's disease, became so ill he had to be hospitalized. After such hospitalization he was taken to the home of defendants for convalescence. Hazel also became ill and was hospitalized. During this period defendant Marvin R. Straith took possession of all the personal property of his parents, including the bank accounts, and assumed direction of the affairs of his parents, both as to the handling of their assets and the taking care of their persons. Hazel violently objected to this procedure and to the actions of her son, Marvin. She engaged counsel, who filed her original bill of complaint in her name only as plaintiff on January 18, 1956, in which she listed her complaints against the defendants and sought to enjoin defendants from molesting and harassing her, and asked that defendants be made to account for the disposition of the personal property of plaintiff and her husband. No mention was made in said bill concerning conveyance of the Portage lake property to defendants, nor was any relief sought in connection therewith. On June 4, 1956, an amended bill of

complaint was proffered. It was then that relief was sought to have the deed conveying the Portage lake property set aside. Subsequently on June 12, 1956, an order was entered granting leave to add Ovid Straith as a party plaintiff and to file amended bill of complaint.

In the amended bill of complaint it was alleged that there was a conspiracy between the defendants to take advantage of Ovid's illness and Hazel's preoccupation with the care of Ovid; that pursuant to said plan defendant Marvin R. Straith began to pressure his parents to deed the property to him. It was alleged that said deed was given solely because of the pressures, demands and threats of dire consequences to Hazel and Ovid Straith by defendant Marvin R. Straith. It was further alleged that defendant Marvin R. Straith promised that if Hazel and Ovid Straith would accede to his wishes that he would see to their protection and care for them and their property. The amended bill of complaint prayed, among other things, that the deed to the lake property be cancelled and void, as procured by fraud, duress and without consideration, and asked for an accounting and other relief. It is to be noted that the bill prayed that the deed be cancelled as without consideration.

Plaintiff at close of proofs in the court below sought to amend her pleadings to include a claim of lack of consideration, which amendment was denied by the trial judge on the theory the defendants were entitled to be informed of the claim of plaintiff through her pleadings and an amendment at that late date would deprive defendants of that right.

Defendants filed an answer to the amended bill of complaint and, among other things, denied that the execution and delivery of said deed was other than the voluntary act of plaintiff and her husband;

denied that the deed was prepared by defendants'' attorney at the request of defendant Marvin R. Straith; alleged that said conveyance was without fraud and in no way the consequence of any pressure, compulsion, coercion, threats or ultimatums on the part of defendants, or either of them, and alleged that all personal property had been returned to plaintiff.

On September 13, 1956, Ovid H. Straith died.

On the trial of the cause on June 11, 1957, Hazel C. Straith testified as follows:

"*Q.* You charge in the bill of complaint what Marvin said would happen if you did not execute the deed. Do you recall what it was he said on that score?

"*A.* Not putting him on the deed?

"*Q.* That is right.

"*A.* He just indicated he wanted to do a lot of work out there and didn't feel he wanted to go ahead and do it unless he felt he could have it some day when we were through with it. He knew he was the only son and there was nobody else to have it."

And in response to a query by the court:

"*The Court:* How many times, if you can remember did you have a conversation of this kind? Just the once?

"*A.* About the lake?

"*The Court:* About the conveyance of the Portage lake property.

"*A.* I believe that is the only time, if I remember right.

"*The Court:* Why did you convey it to him and Geraldine?

"*A.* Well, because Mr. Straith was ill and I know he couldn't do anything out there, take care of it, cut the grass or anything and that is why we conveyed it to him."

Marvin Straith admitted that subsequent to the execution of the deed he had agreed to make alterations and improvements on the cottage, which he represented to his parents would cost him about $9,000, and he represented to his parents that they would be able to come out there and live and use the cottage at any time they desired. He produced testimony that he was not present when his father went to the attorney to have the deed in question prepared and that he was not present when the deed was executed by his father and mother in their own home in the presence of the attorney. He further testified that he had not completed the alterations and improvements because he had been requested not to do so by plaintiff Hazel C. Straith.

A reading of the record discloses that subsequent to the execution of the deed the health of both Ovid and Hazel Straith deteriorated; both appeared to be suffering increasingly from the infirmities of age. Hazel required hospitalization in 1951 and 1953; however, she continued to care for her husband and looked after all of their household affairs and their business affairs until November 23, 1955, when Ovid became so seriously ill he was hospitalized. He was discharged from the hospital on December 14, 1955, and taken to the home of his son and daughter-in-law. Hazel was then ill. She called for her sister Grace Pratt. Her sister found her sick and alone. She suffered a collapse on December 9, 1955, and was taken to the hospital where she remained until December 22, 1955. On her discharge from the hospital, and on arrangements by the defendant Marvin Straith, she was taken to a nursing home in Oakland county. This was done contrary to her wish. On January 5, 1956, she left the nursing home in the company of her niece Frances Oswald. She went first to Mrs. Oswald's home and then to the home of her former daughter-in-law Arlene.

Arlene took care of her until she was able to get access to her own home approximately 4 weeks later.

The actions of Marvin after he heard on January 5, 1956, that his mother had left the nursing home are certainly not the actions of a dutiful son who had the interests and care of his mother at heart, rather they represent the actions of a selfish individual, who, when the opportunity presented itself, attempted to grab the property of his parents (which he erroneously considered himself to be the only legal heir to) prior to their death. The choking of his mother, the expression of his opinion that she was "nuts," the preventing her from visiting her sick husband, and the petition to probate court to have her declared mentally incompetent are indications of an insatiable desire to accomplish his purposes without regard to the feelings of his mother.

The courts carefully scrutinize transactions of this type and place a burden of proof upon those seeking to sustain them. The law with respect to this situation was correctly quoted in *Williams* v. *Williams,* 198 Mich 1, 4, 5:

"That the presumptions are against transactions of this nature and they are critically scrutinized by the courts, putting the burden of proof upon those seeking to sustain them, requires no citation of authority. In view of plaintiff's age, their kinship, and the confidential relations shown to exist between them at the time, it was incumbent upon defendants to show that the agreement with their father was not to his disadvantage, was fair to him and of his own free will, that no advantage was taken by them of his age, mental condition, or confidence in them, that they have fulfilled the terms of their agreement, in letter and spirit, so far as permitted by him, and are ready and willing to continue so to do."

The trial judge heard the testimony in open court. After hearing and seeing the parties and their wit-

nesses the trial judge refused to set aside the conveyance, stating in his opinion as follows:

"Attorney William C. Hague testified that the father, Ovid Straith, came to his office, this being the first time that Attorney Hague had seen him or had done work for him, and explained that he wanted to have the conveyance prepared. After receipt of the legal description from Ovid Straith, Attorney Hague prepared the deed, and it was properly executed by the plaintiffs in their home, their son, Marvin, not being present and having no communication with the lawyer himself other than the original telephone call.

"Helen (Hazel) Straith's niece testified that the plaintiffs had discussed a transaction with her on a number of occasions, the niece being a tax consultant with many years experience, and showed particular interest in the tax consequences. These discussions took place several times and Marvin did not participate.

"Defendant Marvin Straith categorically denied that he had used pressure or undue influence upon his parents although conceding he was not interested in making extensive repairs unless the property was left to him. He denied there was an agreement at the time of the conveyance that he would furnish improvements and repairs in a stated amount, claiming that the 2 things were separate and at different times.

"Plaintiff Hazel Straith, when questioned what pressure was placed upon her, testified that the only serious consequence she had in mind was that Marvin would not continue to take care of the property. He did continue to take care of the property in a limited sense of mowing the lawn, fixing the plumbing and maintaining the home during the summer, but he did not make substantial capital improvements, claiming his mother prohibited him from doing so."

Attention should be called to the fact that we do not have here the ordinary case of parents stripping

themselves of all of the property they own, including their ability to provide a living, by conveying to a child all of their property in consideration of an agreement to care for them for the rest of their days; rather, Mrs. Straith still has her home and property and is in a position to provide for herself. The father, Ovid Straith, during his lifetime made no attempt to have the conveyance set aside, except by being joined as a party plaintiff by order of the court on petition of his wife, Hazel Straith.

Marvin Straith testified that some of his actions of resistance to his mother were done at the request of his father.

Such a transaction as is disclosed by the record in the instant case is regarded by courts of equity with suspicion and vigilance and places the burden of proof upon those seeking to sustain it, as is indicated in *Williams* v. *Williams,* 198 Mich 1. Although the trial judge in his opinion appeared incorrectly to place the burden on plaintiff, it would appear from an examination of the entire record that the presumption had been overcome by the proofs of defendants. Therefore, the decision of the trial judge should not be reversed for this reason. This Court does not reverse where the trial court reached a correct conclusion even though for a wrong reason. *Ormsby* v. *Barr,* 22 Mich 80; *County of Ottawa* v. *Zwagerman,* 229 Mich 501; *Langschwager* v. *Pinney,* 351 Mich 473.

While it is true that a presumption is raised that calls for an explanation, the burden of proof to show undue influence is not to be shifted. *In re Bailey's Estate,* 186 Mich 677.

We quote from *Hill* v. *Hairston,* 299 Mich 672, 679, where Justice BUSHNELL, speaking for the Court, said:

"We are not unmindful that this Court said as recently as *Beattie* v. *Bower,* 290 Mich 517, 529, that, under the authority of *Connor* v. *Harris,* 258 Mich 670, 677, and authorities therein cited:

" ' "The grantor was peculiarly under the care, control, and domination of defendant, who stood in a fiduciary relation to her, and obtained, without consideration, a large amount of property from grantor. Under such circumstances the burden of proof is upon defendant to show the fairness and good faith of the transaction." '

"The rule is better expressed in the quotation from *Gillett* v. *Michigan United Traction Co.,* 205 Mich 410, 414, in *Re Cotcher's Estate,* 274 Mich 154, 159, as follows:

" ' "It is now quite generally held by the courts that a rebuttable or prima-facie presumption has no weight as evidence. It serves to establish a prima-facie case, but if challenged by rebutting evidence, the presumption cannot be weighed against the evidence. Supporting evidence must be introduced, and it then becomes a question of weighing the actual evidence introduced, without giving any evidential force to the presumption itself." ' "

We have noted above the attempt of plaintiff to amend her bill of complaint to include lack of consideration. This motion was denied by the trial judge. Since there was a prayer in the amended bill of complaint and since the case had been tried for several days involving testimony relative to lack of consideration, some question might arise with respect to the discretion of the trial judge under these circumstances. The deed to defendants, even if without consideration, was good as between them. *Gale* v. *Gould,* 40 Mich 515; *Parkinson* v. *Guilloz,* 250 Mich 637. However, an examination of the record discloses there was an actual and adequate consideration.

Justice BUTZEL in *Mallery* v. *Van Hoeven,* 332 Mich 561, 563, said:

"Even if it be shown that no monetary consideration was given by decedent for the property, the consideration of love and affection between parent and child has been held to be adequate by this Court. *Takacs* v. *Takacs,* 317 Mich 72; *Flood* v. *Flood,* 295 Mich 366; *Meade* v. *Robinson,* 234 Mich 322."

The record fails to disclose any undue influence and fraud. Mere opportunity to exert undue influence is not enough. *Potter* v. *Chamberlin,* 344 Mich 399. The record discloses a situation where the defendant Marvin Straith was not present at the time the deed was prepared or executed, neither did he have any connection with the lawyer other than a telephone call indicating that his father desired to make a business appointment. The testimony of Hazel Straith's niece, Marion Stephenson, discloses that Ovid Straith discussed the transaction with her on numerous occasions, and admittedly Hazel Straith raised no question until after December of 1955.

We cannot say, on examination of the entire record, that, had we been in the position of the trial judge, we would have found otherwise than he did with respect to the conflicting claims of the parties. The trial judge heard the witnesses, observed their demeanor, and was in the best position to determine their credibility and to conclude what the facts in the case really were. Although this Court on appeal hears chancery cases *de novo,* on the record in this case this Court cannot say that we would have arrived at a different conclusion in the event we had been in the position of the circuit judge of hearing the witnesses testify and observing their demeanor on the stand.

The decree of the lower court is affirmed. Costs in favor of appellees.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.