COHEN v CANTON TOWNSHIP

1. Zoning — Ordinances — Agricultural Classification — Reasonable Basis.

Agricultural zoning classification of plaintiffs' land, based on a carefully prepared master plan, had a real and substantial relationship to the public health, safety, morals, or general welfare of defendant township's inhabitants where the land had been used for agricultural purposes for many years, all recent building in that area had been residential, the area was poorly served by roads and highways, the area had no public water supply, no public sewage disposal system, could not support a high density of population for private disposal systems, and its runoff was inadequate for the effluent, the board of health had approved very few septic tanks in the area because of inadequate percolation, the construction of a mobile trailer park with its attendant paved areas on plaintiffs' property would greatly increase the water runoff by prohibiting normal percolation, and the creek, into which the runoff drained, could not accommodate additional runoff as recent flood conditions in that area indicated that the present runoff capacity was inadequate.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Zoning § 75 et seq.
[2, 3] 58 Am Jur, Zoning § 140.

2. ZONING—ORDINANCES—CONFISCATORY CLASSIFICATION—PROFITABLE
   USE.
   The difference in value of land as zoned and its value if its
   zoning classification were changed does not alone prove con-
   fiscation; a zoning ordinance is not confiscatory merely be-
   cause property, as zoned, is not being put to its most profit-
   able use.

3. ZONING—ORDINANCES—CONFISCATORY CLASSIFICATION—NOTICE.
   A purchaser of land who knows, or who is charged with know-
   ing, its zoning classification, cannot claim that the classifi-
   cation amounts to confiscation of his property.

Appeal from Wayne, Harry J. Dingeman, Jr., J.
Submitted Division 1 December 16, 1971, at Detroit.
(Docket No. 11542.)   Decided February 25, 1972.

Complaint by Irving Cohen and Knudt Jorgen-
sen against Canton Township and Melvin O. Paulin,
township building inspector, to have a township zon-
ing ordinance declared unconstitutional and to have
a writ of mandamus issued compelling issuance of
a building permit. Writ denied. Plaintiffs appeal.
Affirmed.

*Louis Wechsler* (*I. R. Starr*, of counsel) for plain-
tiffs.

*Sempliner, Thomas & Guth*, for defendants.

Before: HOLBROOK, P. J., and T. M. BURNS and
DANHOF, JJ.

HOLBROOK, P. J.   Plaintiffs are owners of land
located in Canton Township who brought suit in the
trial court against defendant township and its build-
ing inspector, attacking the constitutionality of the
subject zoning ordinance and asking for a writ of
mandamus to require the building inspector to issue
a building permit for construction of buildings and

facilities incident to the planned establishment by plaintiffs on their land of a mobile home trailer park.

After a full hearing, the trial court determined that the subject zoning ordinance was constitutional and denied the writ of mandamus to plaintiffs.

Plaintiffs have appealed and assert two issues for consideration and determination.

I.

Is the classification of AG-Agricultural to plaintiffs' land under the zoning ordinance which prohibits plaintiffs' property to be used for a mobile trailer park unreasonable and therefore unconstitutional?

Under authority of the Township Rural Zoning Act (1943 PA 184; MCLA 125.271; MSA 5.2963[1]), defendant township adopted a comprehensive zoning ordinance in July, 1967. The zoning ordinance was adopted subsequent to the adoption of a comprehensive development plan in May, 1965, which was preceded by several years of study and a report by a planning group.

The zoning ordinance divides the township into various districts with the subject land being zoned "AG-Agricultural District", and the purposes of such a district are set forth in § 10.01 of the ordinance as follows:

"Agricultural districts are those open areas of the township where farming, dairying, forestry operations, and other rural activities are found. Vacant land, fallow land and wooded areas also would be included where such areas are interspersed among farms. Gradually, and based upon a logical comprehensive development plan, agricultural districts may be converted to other land uses. The agricultural district protects land needed for agricultural

pursuits from encroachment by untimely and un-planned residential, commercial and industrial development."

The permitted uses of such a district are basically agricultural and low density residential.

A zoning ordinance is presumed reasonable and constitutional and objectors must assume the burden of proving it unreasonable. *Hammond* v *Bloomfield Hills Building Inspector,* 331 Mich 551 (1951); *Bassey* v *City of Huntington Woods,* 344 Mich 701 (1956); *Patchak* v *Township of Lansing,* 361 Mich 489 (1960).

In ruling on the claim of plaintiffs, we must judge this case on the particular facts and circumstances present. *Korby* v *Township of Redford,* 348 Mich 193 (1957); *Christine Building Company* v *City of Troy,* 367 Mich 508 (1962); *Brandau* v *Grosse Pointe Park,* 5 Mich App 297 (1966).

Initially we can predicate a finding of reasonableness of the zoning ordinance on the master development plan, for it recommended plaintiffs' land be zoned AG-Agricultural. *Biske* v *City of Troy,* 381 Mich 611 (1969).

The plaintiffs assert that mobile home parks are constitutional, legitimate, that they are needed and beneficial to society, and are *prima facie* so recognized in the law. Further, that it is the municipality's burden to present competent evidence to support exclusionary ordinances. *Bristow* v *City of Woodhaven,* 35 Mich App 205 (1971). Unlike the *Woodhaven* case the instant ordinance does not exclude mobile home parks from the township, there being three separate areas in the township designated for this purpose. Five trailer parks are presently located on these areas with 1,555 sites. This represents the largest number of trailer park sites in any community in southeastern Michigan,

with the exception of the City of Warren which has about 70 more sites.

The plaintiffs now assert there was not sufficient, competent evidence to show a real and substantial relationship between the public health, safety, morals, or general welfare, and the proposed use of the land to constitute a reasonable and legitimate exercise of the police power of the defendant township. *Mulias v City of Trenton,* 31 Mich App 535 (1971) ; *Bristow v City of Woodhaven, supra.*

*Arguendo,* assuming that this was the township's burden, we now turn to the record and find the proofs showing the following factors present to justify the classification of plaintiffs' land AG-Agricultural, which have a real and substantial relationship to the public health, safety, morals, or general welfare of the inhabitants of defendant township.

1. It is an agricultural area. It was used as such during the 1970 growing season and planted to beans, wheat, and corn, and has been used for agricultural purposes for many years past.

2. All recent building in the area has been residential. There are many new homes in the area on plots of small acreage, some of them worth as much as $30,000.

3. The area is presently poorly served by roads and highways. Ford Road on the north is a paved state highway, but Napier Road on the west is a gravel country road. Cherry Hill Road on the south is a gravel country road west of Napier, but from Napier east to Ridge is a bound road that has had no care or maintenance for years, and is pot-holed and in poor condition.

4. The area is not served by any public water supply, and it will be years before public water supply can be brought to the area. In the meantime, what building there is in the area must be

served by wells, and as the area is a moraine outwash water supply from wells is problematical.

5. The area is not served by any public sewage disposal system, and will not support a high density of population for private disposal systems, and there is not adequate runoff for the effluent. Very few septic tanks are being approved in the area by the board of health because of inadequate percolation.

6. The drainage from the area must be carried by the lower branch of the Rouge River which at the site is just a good-sized creek. The erection of buildings with their attendant paved areas tremendously increase the water runoff of an area by prohibiting normal percolation. A trailer park would greatly increase the water runoff. Moreover, the Rouge must pass underneath a small factory which is just a few hundred feet downstream, and at that point could not accommodate additional runoff. There have been flood conditions recently which indicates that the present capacity for runoff is inadequate.

We are satisfied that defendant township presented sufficient evidence coupled with the recommendation contained in the master development plan to justify the zoning of plaintiffs' land AG-Agricultural. The defendants having sustained their burden, we must now rule that the plaintiffs had the burden to show that the ordinance as applied to their property was unreasonable having no real and substantial relationship to public health, safety, morals, or general welfare of the community.

The trial judge ruled in part as follows:

"The issue raised before this court is the reasonableness, and therefore, the validity of the zoning

ordinance upon which defendants rely in denying plaintiffs a building permit. In order to determine this issue, the court considered the evidence submitted on behalf of the parties in an effort to ascertain whether the plaintiffs could establish that the ordinance did not bear a real and substantial relationship to the public health, safety, morals, or general welfare. *Pederson v Township of Harrison,* 21 Mich App 535 (1970).

"While entertaining this evidence, the court was ever mindful that an ordinance carries the presumption of validity and that the party attacking a zoning ordinance has the burden of establishing its invalidity. *Rottman v Township of Waterford,* 13 Mich App 271 (1968).

"In view thereof, it was quite evident that many other but less important issues noted in the numerous cases on this subject would not be determinative in this case.

"Of primary concern to this court was whether or not plaintiffs would be able to, carry the initial, primary burden stated above.

"It is the opinion of this court that the record in this matter clearly discloses that plaintiffs * * * have failed to demonstrate that the zoning ordinance complained of does not bear a real and substantial relationship to the health and general welfare of the residents by failing to overcome the assertion that the ordinance protects against construction of a type which will attract and concentrate large numbers of people in an area where sewage, sanitation and water facilities are not available to prevent unsanitary and unhealthy conditions from resulting, and where facilities are inadequate to control the runoff of increased water so that flooding may result.

* * *

"In the case before this court we have been referred to facts and circumstances surrounding the inadequacy of sewage, sanitation and water facili-

ties, and the present inability to adequately control the runoff of increased surface water which would contribute to the possibility of flooding conditions. These bear a real and substantial relationship to the public health and general welfare, and the record in this matter is witness to the fact that the plaintiffs have failed to demonstrate that these alleged inadequacies will not result in the unsanitary and/or unhealthy conditions which the zoning ordinance is presumed to protect; and, which is therefore valid by virtue of its reasonableness under these existing circumstances.

\* \* \*

"It is the opinion of this court that defendant has shown facts with respect to the inadequacy of sewage and sanitation facilities, as well as water supplies and the problems to be encountered by the flooding and possible other detrimental results arising from present inability to control an increased amount of surface water, from which a relationship between the zoning of the property and the proper exercise of police power can be inferred. And, in accordance with the grant of power affirmed in *June v City of Lincoln Park,* 361 Mich 95 (1960), this court exercises its judicial authority to find as a matter of fact that the plaintiffs have failed to sufficiently overcome these issues and therefore have not sustained their burden of establishing the invalidity of the ordinance as applied to their property."

Our Supreme Court has on many occasions set forth our duty in regard to reviewing equity cases *de novo,* and reiterated the rule in the case of *Biske v City of Troy, supra,* pp 613–614:

"To quote Justice T. M. KAVANAGH, writer of the Court's opinion in the *Christine Case* (pp 517–518):

" 'We hear and consider chancery cases *de novo* on the record on appeal. *Johnson v Johnson,* 363 Mich 354 (1961); *Osten-Sacken v Steiner,* 356 Mich

468 (1959); *Futernick* v *Cutler,* 356 Mich 33 (1959); *A & C Engineering Co* v *Atherholt,* 355 Mich 677 (1959); *Straith* v *Straith,* 355 Mich 267 (1959); *Ball* v *Sweeney,* 354 Mich 616 (1958). This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases. This is primarily because the trial judge is in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity. We do not ordinarily disturb the findings of the trial judge in an equity case unless, after an examination of the entire record, we reach the conclusion we would have arrived at a different result had we been in the position of the trial judge."

We are not convinced that had we sat as trial chancellor in the instant case, we would have been compelled to reach a different result. We conclude that the findings of fact by the trial judge were proper and are substantiated by the record.

## II.

Whether the zoning law was confiscatory because it would not allow plaintiffs to utilize their land for its most profitable use?

The plaintiffs assert that their land can best be used for a trailer park. The testimony indicates that the land as presently zoned is worth approximately $1,000 per acre, whereas if it were zoned to be used as a trailer park, it would be worth approximately $3,500 per acre.

In the case of *Pederson* v *Township of Harrison,* 21 Mich App 535 (1970), it was ruled that a zoning ordinance can be confiscatory where it makes the property subject to its regulation "almost worthless."

Difference in value alone does not prove confiscation, *Muffeny* v *City of Southfield,* 6 Mich App 19

(1967); but it is an element which must be considered by the Court in determining whether in fact there is what amounts to a confiscation. *Smith* v *Village of Wood Creek Farms,* 371 Mich 127 (1963); and *Krause* v *City of Royal Oak,* 11 Mich App 183 (1968).

A zoning ordinance is *not* confiscatory where the claim is merely that the property is not being put to its most profitable use. *Patchak* v *Township of Lansing, supra,* pp 496–497;[1] and *Paka Corporation* v *City of Jackson,* 364 Mich 122 (1961).

The facts in the instant case and the *Patchak* case are nearly identical, including the fact that both parties purchased the land knowing or charged with knowledge of how it was zoned. Therefore, the *Patchak* case is directly applicable to the issue under discussion and precludes plaintiffs from prevailing on their claim of confiscation.

Affirmed. Costs to defendants.

All concurred.

---

[1] "In this instance we do not have a case where the land was not suitable to the purpose of the classification. It is not a question of unsuitability for residential or any other purposes except small farms and agriculture. Clearly, the south 10 acres and all of the surrounding territory were, at the time the ordinance was adopted in 1945, suitable for the uses enumerated under class "D". The entire area, west, south, and east, was composed of small farms. This situation existed at the time the zoning ordinance was adopted in 1945. The plaintiffs were chargeable with the knowledge of the zoning when they purchased the property in 1953. The purchasers had no greater right to use the property for a nonconforming use than their seller had. *Stevens* v *Township of Royal Oak,* 342 Mich 105 (1955)."