GREEN v LIMA TOWNSHIP

1. ZONING—FAVORED USE—MOBILE HOMES.

Mobile home parks are a legitimate use of land and the housing shortage in Michigan gives that land use a "favored" status.

2. ZONING—FAVORED USE RESTRICTION—BURDEN OF PROOF.

The burden of proof is on the municipality claiming the validity of a zoning ordinance which excludes development in a "favored use" classification and that "exclusionary" burden can be met only by proof that the restriction serves the general welfare of the region as well as promoting the health and safety of the local community.

3. ZONING—GENERAL WELFARE—EXCLUSION OF PARTICULAR GROUPS.

A restrictive zoning ordinance may never be upheld on the ground of serving the general welfare where its primary purpose is to exclude a certain element of residential dwellers or to prevent increased demand for public services and facilities.

4. ZONING—VALIDITY—EFFECT OF MASTER PLAN.

The reasonableness of an exclusionary zoning ordinance is supported but not proved by the existence of a well-reasoned, flexible master plan which has been noticeably implemented, provided the master plan itself has taken into account "general welfare" considerations.

5. ZONING—MOBILE-HOME EXCLUSION—BURDEN OF PROOF.

A township did not meet its burden of proof in excluding a mobile-home park, a "favored use" land classification, by means of an exclusionary zoning ordinance where the township failed to prove that the exclusion was in furtherance of the general welfare.

REFERENCES FOR POINTS IN HEADNOTES

[1, 5] 58 Am Jur, Zoning § 63.
Establishment, maintenance, and regulation of tourist or trailer camps by public authorities, 115 ALR 1400.
[2] 58 Am Jur, Zoning § 43.
[3] 58 Am Jur, Zoning § 26.
[4] 58 Am Jur, Zoning § 27.

Appeal from Washtenaw, Archie D. McDonald, J. Submitted Division 2 March 8, 1972, at Lansing. (Docket No. 10693.) Decided May 24, 1972.

Action by Edward L. Green, Emily R. Green, and Gail L. Green against Lima Township challenging the validity of a township zoning ordinance as applied to plaintiffs' land. Eugene A. Thornton, Rex C. Darnell, Theodore C. Steinbach, Charles Trinkle, and Harold Trinkle intervened as parties defendant. Judgment for defendants. Plaintiffs appeal. Reversed and remanded.

*Crippen, Dever & Urquhart,* for plaintiff.

*Keusch & Flintoft,* for defendant.

Before: LESINSKI, C. J., and BRONSON and TARGONSKI,* JJ.

LESINSKI, C. J. Plaintiffs Edward, Emily and Gail Green brought this action challenging the validity of defendant's[1] 1966 zoning ordinance which rezoned plaintiffs' land agricultural, and defendant's subsequent refusal to again rezone it to permit the construction of a mobile-home park. The trial judge sitting as trier of fact held that the 1966 agricultural classification and defendant's subsequent refusal to rezone plaintiffs' land was a valid exercise of the township's police power. Plaintiffs appeal as of right.

Plaintiffs' land in question consists of 63 acres of vacant land located in Lima Township. Lima Township has a population of 600 people. Plain-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Throughout this opinoin, "defendant" refers to Lima Township. Due to the disposition of the case, it is not necessary for intervening defendants' issue to be resolved herein.

tiffs' 63 acres are bounded on the south by Jackson Road, a three-lane surface highway, on the north and west by farm land, and on the east by a junkyard.

In 1963 plaintiffs petitioned Lima Township to rezone the said land from A-1 agricultural to B-2 to allow mobile-home park development. Lima Township thereupon notified plaintiffs that their request had been granted by action of the township board on October 12, 1963, and the land was zoned to permit a mobile-home park. From 1963 to 1966, plaintiffs unsuccessfully attempted to secure financing in order to construct a mobile-home park. In 1966 plaintiffs had still not secured sufficient capital to develop the park. On June 16, 1966, plaintiffs, therefore, entered into a sales agreement with a mobile-home park developer. The agreement called for the sale of the 63 acres in question for a purchase price of $145,000, expressly contingent on the ability of the purchaser to use the land for the construction and operation of a mobile-home park.

On September 8, 1966, defendant Lima Township rezoned the land in question back to agricultural. The use of this land for a mobile-home park was thus prohibited. Consequently, the intended sale never took place. In 1969, plaintiffs submitted a new petition requesting that defendant again zone the 63 acres for mobile-home use. This request was denied by defendant.

Plaintiffs contend that the 1966 zoning of their property as agricultural and defendant's subsequent denial of the petition to rezone the 63 acres for mobile-home park use was an invalid exercise of the township police powers in that its actions bore no real and substantial relationship to the health, safety and general welfare.

In *Bristow v City of Woodhaven,* 35 Mich App 205, 212 (1971), this Court acknowledged the existence of a favored use classification of land in Michigan which shifts the burden of proof to the municipality to prove a restrictive zoning ordinance valid.

"A review of the cases indicates that certain uses have come to be recognized as advancing the general public interest; such recognition is found in our State Constitution, statutes, judicial precedents, or a combination of these factors. * * * Where a proposed use has acquired a 'favored' status and is appropriate for a given site the presumed validity of a restrictive local ordinance fades and the burden shifts to the municipality to justify its exclusion."

This Court in *Bristow* found that the prior judicial recognition of mobile-home parks as a legitimate use of land combined with the housing shortage in Michigan gave mobile-home parks a "favored" status. As such, the municipality had the burden of proving the validity of the ordinance which excluded mobile-home parks.

In *Bristow,* this Court took great pains to point out that in order for a municipality to meet what we term here its "exclusionary burden", it must be shown that the "general welfare" is promoted by the exclusion. In the instant case, Lima Township had the burden to show not only that the exclusion of a mobile-home park from plaintiffs' land served to promote the health and safety of the local community, here Lima Township, but also that the "general welfare" of the region was furthered by the exclusion.

In defining the term "general welfare" we stated:

"That term is not a mere catchword to permit the

translation of narrow desires into ordinances which discriminate against or operate to exclude certain residential uses deemed beneficial. Citizens of the general community have a right to decently placed, suitable housing within their means and such right must be a consideration in assessing the reasonableness of local zoning prescribing residential requirements or prohibitions. Such zoning may never stand where its primary purpose is shown to operate for the exclusion of a certain element of residential dwellers." *Bristow,* p 217.

The procedure for determining whether a zoning ordinance which excludes mobile-home parks promotes or inhibits the "general welfare" was stated in *Bristow* at 219:

"In reaching a balance, general policy considerations must be ascertained before determining whether local enactments adversely affect a wider interest. If such is affected, it remains necessary to weigh those interests against local concerns prior to any judicial denunciation of an ordinance restricting a favored use."

No such balancing process was undertaken by the trial court in this case. The evidence presented by defendant merely established that the building of a mobile-home park on plaintiffs' land would increase the burdens, economic and otherwise, on the township for future services. In fn 6 of Bristow, p 217, this Court adopted the unequivocal statement of the Pennsylvania Supreme Court in *National Land & Investment Co v Easttown Township Board of Adjustment,* 419 Pa 504, 532–533; 215 A2d 597, 612 (1965), in rejecting any type of economic justification for exclusionary zoning.

" 'The question posed is whether the township can stand in the way of the natural forces which send our growing population into hitherto undeveloped areas in search of a comfortable place to live. We have concluded not. A zoning ordinance, whose primary purpose

is to prevent the entrance of newcomers in order to avoid future burdens, economic and otherwise, upon the administration of public services and facilities can not be held valid. * * * It is clear, however, that the general welfare is not fostered or promoted by a zoning ordinance designed to be exclusive and exclusionary.' "

In the *Girsh Appeal,* 437 Pa 237, 243, 245; 263 A2d 395, 398–399 (1970), that Court added:

"Zoning is a tool in the hands of governmental bodies which enables them to more effectively meet the demands of evolving and growing communities. It must not and can not be used by those officials as an instrument by which they may shirk their responsibilities. * * * The simple fact that someone is anxious to build apartments is strong indication that the location of this township is such that people are desirous of moving in, and we do not believe * * * [the township] can close its doors to these people."

In *Lakeland Bluffs, Inc v County of Will,* 114 Ill App 2d 267, 279; 252 NE2d 765, 770 (1969), cited in fn 6 in *Bristow,* p 217, the Illinois Court of Appeals recognized that where certain land uses are concerned the term "general welfare" must be defined to meet the exigencies caused by urbanized society.

"[T]his [need for lower-cost housing] was an element which should be considered in determining the reasonableness of the restrictive zoning ordinance."

In his dissent in *Vickers v Township Committee of Gloucester Township,* 37 NJ 232, 266; 181 A2d 129, 247 (1962), Justice Hall of the New Jersey Supreme Court pointed up the dire consequences of allowing municipalities to engage in exclusionary zoning:

*"Lionshead* * * * and *Fischer* in the breadth of some

of its language * * * rationalize such exclusionary results, as does the majority here, by reference to the statutory zoning purposes * * * of 'conserving the value of property' and 'encouraging the most appropriate use of land' and in the name of preservation of the character of the community or neighborhood. I submit these factors are perverted from their intended application when used to justify Chinese walls on the borders of roomy and developing municipalities for the actual purpose of keeping out all but the 'right kind' of people or those who will live in a certain kind and cost of dwelling. What restrictions like minimum house size requirements, overly large lot area regulations and complete limitation of dwellings to single family units really do is bring about community-wide economic segregation. It is a proper thing to exclude factories from residential zones to conserve property values and to encourage the most appropriate use of land throughout the municipality. It is quite another and improper thing to use zoning to control who the residents of your township will be. To reiterate, all the legitimate aspects of a desirable and balanced community can be realized by proper placing and regulation of uses, as the zoning statute contemplates, without destroying the higher value of the privilege of democratic living." (Citations omitted.)

The interest of the potential entrants into the area and their unfettered right to suitable housing within their means, in aesthetically desirable areas where there is a willing seller, is so basic to a free people as to be encompassed in the phrase "general welfare". This term is not, however, boundless. A zoning ordinance may have the effect of excluding potential entrants and still be in furtherance of the "general welfare" where the exclusion is simply an undesirable side effect of a legitimate community policy, such as where competent evidence establishes that the proposed residential dwellings, be they mobile, multiple or sin-

gle family residences, would be unable to meet the state's health standards.

In the case at bar, the trial court based its findings that Lima Township was not engaged in exclusionary zoning on the fact that there were three parcels of land in the township zoned for mobile-home parks though none were developed. As we stated in *Bristow,* p 219–220:

"Where a particular parcel is involved, a showing of predesignated and available sites better suited could bear on the reasonableness of restrictions as to given property. Such a showing would, however, *seriously depend on the existence of a carefully prepared, well-reasoned, properly adopted, and flexible master plan* which would carry special weight only where noticeably implemented." (Emphasis supplied.)

Lima Township has no master plan. This evidence was, consequently, of little or no merit in determining the reasonableness of the zoning ordinance as to plaintiffs' property.

We do not mean to say that the existence of a master plan would have given Lima Township a license to exclude. While a valid master plan is evidence of the reasonableness of an exclusionary zoning ordinance, it is not conclusive proof that the burden has been met. The same "general welfare" considerations we have spoken of must be taken into account even where a master plan exists. This is especially true where the master plan was primarily concerned with the interests of the locality as opposed to the region. As we stated in *Bristow,* p 220:

"In this regard, particular care should be taken that an unwanted and yet necessary use is not being 'pushed off' onto a neighboring community where it may be equally unwanted."

Lima Township is not unlike many Michigan communities which find themselves on the edge of urban and suburban areas. While Lima Township at present has only 600 residents, it is soon to be reached by the outward flow of urban expansion. This flow spells substantial change to Lima Township's semirural nature as it becomes melded into the metropolitan region which will eventually encompass most of Washtenaw County. Townships such as Lima are heterogeneous governmental units whose political boundaries are largely artificial. To allow the first 600 people in an area to use these artificial boundaries to exclude all but certain kinds of people, or those who can afford to live in favored kinds of housing, or to keep down tax bills of present property owners, subverts the idea of zoning promoting the general welfare.

Defendant Lima Township had the burden to prove that the exclusion of a mobile-home park from plaintiffs' land was in furtherance of the general welfare. A thorough examination of the record in this case indicates that defendant failed to meet this burden. The trial court is, therefore, reversed and defendant's zoning ordinance is held invalid as applied to plaintiffs' land. The cause is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

All concurred.