BINKOWSKI v SHELBY TOWNSHIP

OPINION OF THE COURT

1. ZONING—STATUTES—POLICY.

The zoning laws of this state were not adopted as, and the courts will not permit them to be used for, a vehicle by which a fragment of the larger community will be allowed to pick and choose the manner and degree in which it will participate in the development of the larger community with total disregard for the needs of the larger community.

2. TRIAL—EVIDENCE—PRIMA FACIE CASE—DEFINITION.

A litigating party is said to have a prima facie case when the evidence in his favor is sufficiently strong for his opponent to be called on to answer it; a prima facie case can be overthrown only by rebutting evidence adduced on the other side.

3. ZONING—EVIDENCE—PRIMA FACIE CASE—BURDEN.

In a zoning case, proof by the property owner of a total exclusion of certain legitimate uses of land establishes a prima facie case and the burden of going forward with the evidence at this point shifts to the defendant municipality, but the burden of proof remains with the property owner; should the municipality produce sufficient evidence to leave the state of the evidence in equipoise, then the property owner's cause is defeated because in a zoning case it is the plaintiff who bears the risk of nonpersuasion and is the party who loses should the trier of fact not be persuaded.

4. ZONING—ORDINANCES—FAVORED USE—MASTER PLAN.

A party challenging a zoning ordinance on the ground that it totally excludes a favored use is directly challenging the master plan as a whole and, given the Legislature's insistence on planning, the plan utilized by the zoning authority must be

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Zoning § 14 *et seq.*
[2, 3] 30 Am Jur 2d, Evidence § 1165.
[4, 11] 58 Am Jur, Zoning § 27.
[5–12] 58 Am Jur, Zoning § 184.

given careful consideration; courts of this state should make every effort to preserve such plans where they are developed in good faith and are reasonable as a whole with regard to the needs of the local and general community.

5. ZONING—LEGITIMATE LAND USES—MOBILE HOME PARKS—EXCLUSION.

A township in which only one 57-acre parcel is zoned to permit the development of a mobile home park cannot be said to have totally excluded mobile home parks; however such a fact is close enough to total exclusion to render the difference inconsequential.

6. ZONING—EVIDENCE—OTHER AVAILABLE LANDS—PRIMA FACIE CASE —BURDEN.

In a zoning case the availability of other sites for the use sought, while it may bear on the reasonableness of the exclusion does not establish the exclusion of a plaintiff's legitimate use of his land because the existence of those areas means that the plaintiff did not establish the exclusion and, therefore, the burden of going forward with the evidence may never have shifted to the defendant municipality.

7. ZONING—EVIDENCE—LEGITIMATE LAND USES—PERMITTED USE— PRIMA FACIE CASE.

The rule in a zoning case that a prima facie case is made out when a complete exclusion of certain legitimate land uses is shown should be extended to cases where the legitimate uses are not totally excluded but where they are permitted in such minimal quantities as to be tantamount to exclusion.

8. ZONING—EXCLUSION—PRIMA FACIE CASE—DEFENSES—LACK OF NEED.

In a zoning case where the plaintiff has established a prima facie case of total exclusion or such minimal permission as to be tantamount to total exclusion and the fact is that there exists within the municipality an area zoned for the use in question and such area has not yet been developed, which may be an indication of a lack of need for such a development in the area, the proofs on behalf of the defendant municipality have left the matter in equipoise and the plaintiff should not prevail.

9. ZONING—EVIDENCE—PREFERRED LAND USES—EXCLUSION—PRIMA FACIE CASE—SUITABILITY OF PROPERTY.

A plaintiff in a zoning case who attempts to establish a prima facie case based on a showing of the total exclusion of a certain preferred land use must also demonstrate the suitability of his

particular parcel for purposes of the excluded use in order to prevail.

CONCURRENCE IN PART, DISSENT IN PART BY BRONSON, P. J.

10. ZONING — EVIDENCE — FAVORED USE — PRIMA FACIE CASE — DEFENSES.

*The burden of going forward with evidence to justify an excluded use shifts to a defendant municipality in a zoning case when the plaintiff has submitted appropriate evidence to establish the exclusion of a use which has acquired a "favored" status and is appropriate for the given site; some of the factors upon which the governmental unit may rely to satisfy its burden are traffic patterns, availability of water supply and sewage disposal systems, availability of police and fire protection, and a comparison with surrounding uses.*

11. ZONING—FAVORED USE—MASTER PLAN.

*The caveat that courts, in zoning cases alleging exclusion of a "favored" use, will accord special weight only to master plans which are noticeably implemented provides an unambiguous encouragement for master plan development and only strict adherence to this principle will insure progress toward rational and just zoning control.*

12. ZONING—FAVORED USE—MOBILE HOMES—DISCRIMINATION—PRIMA FACIE CASE.

*A prima facie case of zoning discrimination by design is made out where it is shown that although defendant township recently enacted an ordinance permitting mobile home use, only a single parcel of land in the township is zoned for the construction of mobile home parks and the current use of that parcel for agricultural purposes belies such use, and the township zoning map has not been amended to designate appropriate areas for mobile home development.*

Appeal from Macomb, Frank E. Jeannette, J. Submitted Division 2 November 13, 1972, at Detroit. (Docket No. 13342.) Decided April 24, 1973.

Complaint by Don Binkowski against Shelby Township for injunctive relief from a denial of a requested zoning change. Summary judgment for defendant. Plaintiff appeals. Affirmed.

*McAlpine & Cardamone,* for plaintiff.

*Roy W. Rogensues,* for defendant.

Before: BRONSON, P. J., and V. J. BRENNAN and O'HARA,* JJ.

V. J. BRENNAN, J. This case was tried on stipulated facts before a judge of the Macomb County Circuit Court. The pertinent portion of that stipulation is as follows:

"This is a zoning case wherein Plaintiff seeks judicial relief from denial of a zoning change by Defendant municipality.

"Plaintiff is a land contract vendee of 70.975 acres of vacant land located at the northwest corner of 23 Mile and Hayes Roads in Shelby Township.

"Defendant has in effect a zoning ordinance and accompanying zoning district map. Plaintiff's lands are classified thereunder for single-family residential use, except for a small segment at the precise corner of 23 Mile and Hayes Roads which is classified for professional business use.

"Plaintiff applied to Defendant for a zoning change to an 'MHP' zoning classification to permit construction of a mobile home park on the property in question. He also requested that a small portion of said property at the precise corner of 23 Mile and Hayes Roads be rezoned to permit construction of an appurtenant commercial shopping center.

"The Shelby Township Planning Commission, with 5 of its 9 members present and voting, favorably recommended Plaintiff's requested zoning change, by a vote of 3 'yes' and 2 'no'. The Macomb County Planning Commission concurred with the Shelby Planning Commission's favorable recommendation. However, the Defendant Township Board, the legislative body, denied Plain-

_____
* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

tiff's requested zoning change at its November 21, 1970, meeting, by a vote of 6 'yes' and 0 'no.'

"Defendant Township, east of the M-53 freeway, is sparsely populated and its land area is substantially undeveloped or devoted to agricultural use. There are no public water or sewer facilities available to serve the premises in question.

"Early in 1970, the text of Defendant Township's existing zoning ordinance was amended to create a new 'MHP' zoning district to permit mobile home parks therein and to regulate and control their use. The accompanying zoning district map was not amended to provide any MHP districts.

"No developed mobile home parks presently exist in Defendant Township. The only identifiable MHP district existing in the Township is a presently-vacant 57-acre parcel on the north side of 22 Mile Road, east of the M-53 freeway. This parcel was rezoned for mobile home park use by the Township Board in November, 1970, at the request of the property owner.

"Plaintiff's property is vacant land entirely surrounded by undeveloped property. The properties to the east, west, north and south are devoted to agricultural use with a scattering of homes fronting on 23 Mile Road. The southeast corner is the site of the new Berz Airport which presently is under construction."

Based on this stipulation of facts, each party moved for summary judgment pursuant to GCR 1963, 117.2(3). The trial court, in a written opinion, decided to grant defendant's motion. The relevant portions of the trial court's opinion are as follows:

"The question that the Court finds squarely presented is whether or not the action of the Shelby Township Board was a valid exercise of the so-called police power granted by the State of Michigan to the Township or other municipal unit.

\* \* \*

"There has been no showing, either in pleadings or in

factual testimony, that the plaintiff cannot use the lands in question according to the existing zoning pattern but rather that it is his preference to use it for another purpose; namely, mobile home development.

"It is the opinion of the Court that it is the burden of proof of the plaintiff to establish that the zoning placed upon the property is arbitrary, capricious, confiscatory or unreasonable. The ordinance of the Township of Shelby recently amended does provide an area for mobile home development, although, admittedly not in use at this time. This is not a question that a zoning ordinance neither prohibits entirely or has made no provision for mobile home use. The burden of proof is upon the plaintiff to establish the invalidity of the Township zoning ordinance, *Township of Commerce vs. Rayberg,* 5 Michigan Appeals 554, and this Court, as stated in *Bray Burn, Inc. [sic] v. Bloomfield Hills* 350 Michigan 425, 'this Court does not set [sic] as a super zoning commission'. * * * Let us state the proposition clearly as may be: it is not our function to approve the ordinance before us as to wisdom or desireability [sic]. * * *

"It is, therefore, the ruling of this Court that the plaintiff has not defeated the presumption of validity nor shown the ordinance to be arbitrary, capricious, unreasonable or confiscatory as to the land in question."

From the judgment for defendant entered pursuant to this opinion, the plaintiff appeals and raises several arguments for our consideration. On careful analysis, we find that this Court is presented with one basic issue: Which party has the burden of proof in this litigation, and was it met?

A proper resolution of the question presented to us requires a careful consideration of this Court's recent and memorable opinion in *Bristow v City of Woodhaven,* 35 Mich App 205 (1971). To begin our analysis, let us state that we agree with the underlying sentiment and motivating consideration behind Judge GILLIS' opinion in *Bristow:* that a

municipality should not be allowed to interfere with the proper growth, and with the manifest needs of the larger community of which it is a part. The zoning laws of this state were not adopted as, and the courts will not permit them to be used for, a vehicle by which a fragment of the larger community will be allowed to pick and choose the manner and degree in which it will participate in the development of the larger community with total disregard for the needs of that larger community. However, we feel that we must take issue with some of the language employed by the *Bristow* panel, and more particularly we must take issue with the manner in which other panels of this Court have subsequently interpreted *Bristow*.

In *Simmons v Royal Oak,* 38 Mich App 496, 497 (1972), and *Green v Lima Twp,* 40 Mich App 655, 658 (1972), the following language from *Bristow* is used to support the conclusion that total exclusion of a preferred use shifts the burden of proof to the defendant zoning authority.

"A review of the cases indicates that certain uses have come to be recognized as advancing the general public interest; such recognition is found in our State Constitution, statutes, judicial precedents, or a combination of these factors. * * * [W]here a proposed use has acquired a 'favored' status and is appropriate for a given site, the presumed validity of a restrictive local ordinance fades and the burden shifts to the municipality to justify its exclusion." *(Bristow, supra,* p 212.)

We believe that both *Simmons* and *Green* misread *Bristow*. They assume that the word "burden" in this passage refers to the burden of proof. From the context of the *Bristow* opinion, and especially from the immediately preceding paragraph, it is apparent that the reference is to the

"burden of going forward". The pertinent portion of that paragraph reads as follows:

"Therefore, in such limited situations, the proponent of a preferred or protected but prohibited use may establish a *prima facie* case thereby casting upon the municipality *the burden of going forward* [emphasis added] to justify its prohibition of a use heretofore recognized as beneficial to the public welfare." *(Bristow,* p 211.)

An analysis of the authority utilized by the Court in *Bristow* would compel us to reach the same conclusion. The analysis on this point in *Bristow, supra,* pp 211–212, begins with a reference to an observation in a law review article that in certain situations "[c]ourts have eradicated the presumption of validity, shifted the burden of going forward onto the municipality, or even shifted the burden of proof of reasonableness to the zoning municipality".[1] In the next paragraph, the Court observes that " * * * where a proposed use has acquired a 'favored' status and is appropriate for a given site, the presumed validity of a restrictive local ordinance fades and the burden shifts to the municipality to justify its exclusion". This is, of course, the language relied upon by panels of this Court in *Simmons* and *Green* to justify the conclusion that it is the burden of proof which shifts. The cases on which the Bristow Court seems to rely for that assertion are *Roman Catholic Archbishop of Detroit v Village of Orchard Lake,* 333 Mich 389, 394 (1952), and *Sisters of Bon Secours Hospital v Grosse Pointe,* 8 Mich App 342 (1967).

The language from *Archbishop, supra,* on which the *Bristow* panel relies is as follows:

---

[1] Feiler, "Metropolitanization and Land-Use Parochialism—Toward a Judicial Attitude", 69 Mich L R 655, 689 (1971).

"A thesis so inconsistent with the spirit and genius of our free institutions and system of government and the traditions of the American people will not be accepted by way of presumption, *nor at all in the absence of competent evidence establishing a real and substantial relationship between the attempted exclusion and public health, safety, morals or the general welfare and, hence, the reasonableness and validity of the restriction upon the use of private property as a legitimate exercise of the State's police powers."* (Emphasis added.)

The Supreme Court in *Archbishop* held that the presumption of reasonableness was only indulged in the absence of any evidence regarding the reasonableness of the ordinance. They also held that the evidence established the exclusion of churches and that that was enough to obviate the necessity to resort to the presumption; in effect, enough evidence had been brought forth to require the municipality to respond. We do not read *Archbishop* to say that the burden of proof has been shifted to the defendant municipality. We read it to mean that on the evidence presented, the plaintiff had established his case and it was incumbent upon the municipality to come forward. Again in *Bon Secours, supra,* we find no language which could be construed as stating that the burden of proof had shifted. The Court merely analyzed the competing evidence and concluded:

"Without further summarizing the testimony produced at trial, it is sufficient to say that the evidence produced by the plaintiff, if believed by the trial judge, amply supports the trial court's finding that the * * * zoning regulation * * * was unreasonable and bore no substantial relation to public health, safety, morals, or the general welfare." *Bon Secours, supra,* at p 358.

A careful reading of the opinion reveals that the Court in *Bon Secours,* analyzed the case before it

on traditional grounds. Furthermore, that Court also observed that,

" * * * legitimate land uses may not be prohibited unless the prohibition bears a real and substantial relationship to public health, safety, morals, or the general welfare of the community. While initially the ordinances were clothed with a presumption of validity, in all the above cases[2] that presumption was overcome by a showing of no relationship between the ordinance and objects of the police power when viewed in light of existing community developments." *Bon Secours, supra,* at p 349.

In other words, the Court in *Bon Secours* did not even reach the *Bristow* conclusion that demonstrating the total exclusion of certain legitimate uses establishes a prima facie case. We therefore conclude that the authority relied on by the *Bristow* panel would only support a conclusion that upon demonstration of the exclusion of certain legitimate land uses, a prima facie case is established and the burden of going forward has shifted.

These two cases, *Archbishop* and *Bon Secours,* were decided by the Supreme Court and this Court respectively after weighing the evidence presented and either agreeing with or reversing the judgment of the trial court. They present no novel conclusion regarding which party bears the burden of proof. However, by proceeding, in those cases, to analyze the evidence brought forward below, our Courts have *sub silentio* held that enough evidence was presented on which the case could be submitted to the trier of the fact. In effect, that a prima facie case had been established. Another panel of this Court in the case of *Midland Twp v Rapanos,*

---

2 *Gundersen v Village of Bingham Farms,* 372 Mich 352 (1964); *Wolverine Sign Works v Bloomfield Hills,* 279 Mich 205 (1937); *Gust v Canton Twp,* 342 Mich 436 (1955).

41 Mich App 75 (1972), has also construed the relevant language from *Bristow* to refer to a shift in the burden of going forward.

What we therefore conclude to be the import of *Bristow* is that in a zoning case, a plaintiff may establish a prima facie case by showing a complete exclusion of certain legitimate land uses. It would be well for us to pause here and consider exactly what is meant by the phrase "prima facie case". Black's Law Dictionary (4th ed), p 1353, defines the phrase as follows:

"Prima Facie Case. Such as will suffice until contradicted and overcome by other evidence. *Pacific Telephone & Telegraph Co. v. Wallace,* 158 Or. 210; 75 P.2d 942, 947. A case which has proceeded upon sufficient proof to that stage where it will support finding if evidence to contrary is disregarded. In re Hoagland's Estate, 126 Neb. 377; 253 N.W. 416.

"A litigating party is said to have a *prima facie* case when the evidence in his favor is sufficiently strong for his opponent to be called on to answer it. A *prima facie* case, then, is one which is established by sufficient evidence, and can be overthrown only by rebutting evidence adduced on the other side."

In short, if the defendant presents no evidence after the plaintiff has established a prima facie case, the plaintiff is victorious.

However, even after he has made out a prima facie case the burden of proof still remains, as it properly should, with the plaintiff. Again, let us return to basics and consider the meaning of this phrase. Again from Black's Law Dictionary (4th ed), p 246:

"It [burden of proof] is frequently said, however, to have two distinct meanings: (1) the duty of producing evidence as the case progresses, and (2) the duty to establish the truth of the claim by preponderance of the

evidence, and *though the former may pass from party
to party, the latter rests throughout upon the party
asserting the affirmative of the issue. Sellers v Kincaid,*
303 Ill. 216; 135 N.E. 429, 433; *Stofer v Dunham,* Mo.
App, 208 S.W. 641, 644." (Emphasis added.)

Thus, according to *Bristow,* proof of the total
exclusion of certain legitimate uses of land estab-
lishes a "prima facie case". However, although the
burden of going forward with the evidence at this
point shifts to the defendant municipality, the
burden of proof remains with the plaintiff. The
practical effect of this distinction is that, should
the municipality produce sufficient evidence to
leave the state of the proofs, in the opinion of the
trier of fact, in equipoise, then it is the plaintiff
whose cause is defeated. Stated this way, the bur-
den of proof is, in effect, a risk of nonpersuasion.
And in zoning cases, indeed as is the case in any
litigation, it is the plaintiff who bears the risk of
nonpersuasion, he is the party who loses should
the trier of fact not be persuaded.

In addition to our disagreement with the con-
struction placed upon *Bristow* by certain panels of
this Court, we would also take issue with the
*Bristow* panel's elucidation of the weight to be
given a community's master plan. The language
we are concerned with states as follows:

"Once a use is shown to be *prima facie* related to the
public health, safety, or general welfare, the task of
justifying local restrictions or prohibitions is not and
should not be viewed as an impossible one for the
municipality. The lack of need for the proposed use or
the overabundance of similar, existing uses are matters
for consideration. Where a particular parcel is involved,
a showing of predesignated and available sites better
suited could bear on the reasonableness of restrictions
as to given property. *Such a showing would, however,
seriously depend on the existence of a carefully pre-*

*pared, well-reasoned, properly adopted, and flexible
master plan which would carry special weight only
where noticeably implemented.* In this regard, particu-
lar care should be taken that an unwanted and yet
necessary use is not being 'pushed off' onto a neighbor-
ing community where it may be equally unwanted.
Each factor must be considered in its proper perspec-
tive. Traffic patterns are valid local interests of greater
concern than aesthetics or economic uniformity. The
combinations of factors are unlimited and each case
must finally be decided on its peculiar factual setting.
Yet, as we have attempted to demonstrate here, Courts
are not without guidelines in evaluating a given case."
(Emphasis added.) *Bristow, supra,* pp 219–220.

When challenging a zoning ordinance on the
grounds that it totally excludes a legitimate use,
the plaintiff is obviously making a direct challenge
to the master plan as a whole. Given that all
zoning in this state must be done in accordance
with a plan of some sort (see the dissent in *Kropf
v Sterling Heights,* 41 Mich App 21, 29 [1972]), the
plan utilized by the zoning authority must be
given careful consideration. In fact, given the Leg-
islature's insistence on planning, the courts of this
state should make every effort to preserve such
plans where they are developed in good faith and
are reasonable as a whole with regard to the needs
of the local and the general community. We thus
cannot fully endorse the restrictive language from
*Bristow* regarding the weight to be given a master
plan.

Let us now begin, finally, to apply this analysis
to the facts of the case before us. As we have
previously noted, the stipulated facts on which the
parties submitted this case to the trial court were
meager. From these facts it appears that the de-
fendant township has not "totally" excluded mo-
bile home parks. There is one 57-acre parcel
within the township which is zoned to permit

development of a mobile home park. While we therefore cannot say that the defendant township has totally excluded mobile home parks, the allowance of only one 57-acre park is close enough to total exclusion to render the difference inconsequential.

The propriety of applying *Bristow* to situations displaying various degrees of limitation upon the establishment of mobile home parks has yet to be clearly articulated by any panel of this Court. In *Simmons,* this Court applied *Bristow,* but set forth no facts regarding the extent to which the City of Royal Oak limited mobile home parks. The Court in *Cohen v Canton Twp,* 38 Mich App 680 (1972), only assumed *arguendo* that *Bristow* would be applicable. From the information which the Court sets out in *Cohen* (to wit, that only one other municipality in southeastern Michigan had more mobile home sites than Canton Township) it is obvious that the Court in that case was merely demonstrating to the plaintiff that he could not prevail under any theory of law. *Cohen* should not be interpreted as precedent for the applicability of *Bristow* to a similar situation. In *Green v Lima Twp, supra,* and also in *Congregation Dovid Ben Nuchim v Oak Park,* 40 Mich App 698 (1972), the position was adopted that *Bristow* requires the municipality to justify its exclusion of certain uses from the parcel of land owned by the plaintiff. In *Congregation, supra,* at p 700, the Court stated:

"Thus, the municipality has the burden of proving the validity of the restriction by producing competent evidence to show a real and substantial relationship between *the restriction on the use of the property* and the public health, safety and welfare of the community. *Bristow v City of Woodhaven, supra.*"(Emphasis added.)

This was not an inadvertant statement since the Court later said:

" * * * the municipality, herein, has the burden of establishing the validity of the restrictive ordinance by producing competent evidence showing a real and substantial relationship between the exclusion of the proposed use of the property to build a church and the public health, safety, morals or general welfare." *Congregation, supra,* at p 701.

In *Green, supra,* the Court said:

"Defendant Lima Township had the burden to prove that the exclusion of a mobile-home park *from plaintiffs' land* was in furtherance of the general welfare." *Green, supra,* at 663. (Emphasis added.)

From our analysis of *Bristow* and its antecedent authority, *supra,* the error of such positions should be obvious. The basis for the *Bristow* holding was that a municipality should not be permitted to exclude certain uses from the territory within its borders. To apply it as this Court has in *Congregation* and in *Green* would have the effect of establishing a prima facie case for each and every plaintiff who could demonstrate that certain legitimate uses are prohibited from his particular parcel. It would require no showing of an exclusion of the use from the community as a whole. Such a position is not supportable.

The Court in *Green* committed another error regarding the applicability of *Bristow.* At p 662 the *Green* Court said as follows:

"In the case at bar, the trial court based its findings that Lima Township was not engaged in exclusionary zoning on the fact that there were three parcels of land in the township zoned for mobile-home parks though none were developed. As we stated in *Bristow,* p 219–220:

" 'Where a particular parcel is involved, a showing of predesignated and available sites better suited could bear on the reasonableness of restrictions as to given property. Such a showing would, however, *seriously depend on the existence of a carefully prepared, well-reasoned, properly adopted, and flexible master plan* which would carry special weight only where noticeably implemented. (Emphasis supplied.)'

"Lima Township has no master plan. This evidence was, consequently, of little or no merit in determining the reasonableness of the zoning ordinance as to plaintiffs' property."

It is our considered opinion that the *Green* panel missed the point. They considered the evidence of the availability of other sites as merely bearing on the "reasonableness" of the exclusion of a mobile home park from plaintiff's land. The correct application is that the existence of other suitable and available areas goes directly to the applicability of the *Bristow* doctrine in the first place. In this sense, *Bristow* itself may be internally inconsistent. By its terms, it applies to cases where the municipality has excluded or tended to exclude certain legitimate uses. But it also states, as the *Green* panel set forth in the quoted portions, *supra,* that a showing of the availability of other areas within the confines of the zoning authority bears on the reasonableness of the ordinance. However, as we have just stated, the very existence of those areas means that the plaintiff did not establish the exclusion, or total exclusion, of his legitimate use and that, therefore, the burden of going forward may never have shifted to the defendant.

Judge O'Hara, dissenting in *Rodd v Palmyra Twp,* 42 Mich App 434, 441 (1972), recognized that "total" exclusion was not necessary for the application of the *Bristow* doctrine, but that its applica-

tion was appropriate in a situation characterized as: .

" * * * *de facto* exclusion with a little dash of *de jure* recognition."

A different view is taken by yet another panel of this Court in *Midland Twp v Rapanos, supra,* at pp 76–77, in which the Court stated:

"Recently in *Bristow v City of Woodhaven,* 35 Mich App 205 (1971), this Court (per J. H. GILLIS, J.) rendered a comprehensive and definitive opinion regarding certain preferred or protected uses of land *which if totally prohibited* cast upon the zoning body the burden of going forward to justify its prohibition of such a use."

Very little can be drawn from these prior dispositions. It is none the less clear that *Bristow* (as construed herein) at least applies to situations where the zoning authority has, de jure or de facto, totally excluded one of certain legitimate uses. Common sense, which we resort to in the absence of stare decisis, would indicate that *Bristow* should also be applicable where certain legitimate uses are not "totally" excluded but where they are permitted in such minimal quantities as to be tantamount to exclusion. This is of course a finding of fact to be made by the trial court in order to determine whether *Bristow* should apply. On this basis, we conclude that there is enough evidence in the stipulation of the parties on which it could be said that plaintiff made out a prima facie case.

At the same time, there is also some counter evidence available to support defendant township's ordinance. The fact that the one area zoned for mobile home park purposes has yet to be developed may be indicative of a lack of a need for such

a development in that area. On the basis of the record before us there is no information on which we could conclude that there is no current need or on which we could base a forecast as to the likelihood of any future need for such a development. A showing by the zoning municipality that there is no need for the particular excluded land use within its borders, in terms of its own development and the development of the larger community, would certainly be sufficient to defeat plaintiff's case. We are thus of the opinion that neither party in this lawsuit has established its case; that is, the proofs on behalf of the defendant municipality have left the matter in equipoise. Thus, the plaintiff should not prevail.

Furthermore, the plaintiff's case in this matter has failed for yet another reason. In a zoning case in which the plaintiff attempts to establish his prima facie case under the *Bristow* rationale, his task is not completed upon a showing of the infirmity of the zoning ordinance as a whole. The plaintiff must also demonstrate the suitability of his particular parcel for purposes of the excluded use. The operative language of *Bristow, supra,* at p 212, makes this conclusion clear:

"[W]here a proposed use has acquired a 'favored' status *and is appropriate for a given site,* the presumed validity of a restrictive local ordinance fades and the burden shifts to the municipality to justify its exclusion." (Emphasis added.)

The suitability of the site is, as it should be, a question of critical importance. A showing that the zoning of the municipality is infirm as a whole due to exclusion of certain uses by no means compels the conclusion that plaintiff's parcel of land must necessarily be rezoned to permit the excluded use.

Such an attitude on the part of the Courts would be even worse than the spot zoning condemned by this Court in *Anderson v Highland Twp,* 21 Mich App 64 (1969).

We conclude, as did the trial court, that the plaintiff has failed to establish his case on these proofs. On this basis we affirm the court below.

Affirmed.


BRONSON, P. J. *(concurring in part and dissenting in part).* While I agree with the majority opinion's characterization of the *Bristow* burden, I cannot accept its criticism and limitation of *Bristow,* its precedents and antecedents. I write separately to state my views of the intended purpose and effect of *Bristow.*

The majority cites language from *Bristow* that the proponent of a preferred use who has established a prima facie case casts upon the municipality the burden of going forward to justify its exclusion of this legitimate and beneficial use. The distinction drawn by the majority between the burden of going forward and the burden of proof based upon this language is sound. *Bristow* was never intended to be a substitute for plaintiff's obligation to try his lawsuit. Although plaintiff properly bears the burden of "ultimate persuasion", *Bristow* provides a vehicle for encouraging municipalities to recognize their responsibilities to the development of not only their community but that of the surrounding community.

The purpose of *Bristow* was to circumvent the problem of one community "pushing off" undesirable uses to another community. It is in this context that the recognized need for particular types of housing justifies our imposition of the burden of going forward to justify the exclusion of such uses

upon governmental units. Concededly, a plaintiff does not establish a prima facie case by pleading a preferred use, citing *Bristow,* and proclaiming, "I win". A plaintiff is not entitled to this procedural advantage until he has submitted the appropriate evidence to establish the exclusion of a use which "has acquired a 'favored' status and is appropriate for the given site". *Bristow,* p 212.

The motivation for *Bristow's* shifted burden concept was to require municipalities to justify their failure to adequately provide for the necessary and varied housing needs of the public. Recently, in *Johnson v Lyon Twp,* 45 Mich App 491, 493–494 (1973), Judge John H. Gillis, the author of *Bristow,* described the rationale behind this shifted burden concept. Judge Gillis stated:

> "Practically speaking, the shifting of the burden of going forward is not only a rule of procedural convenience but is grounded in considerations of fairness to the parties as well. The governmental unit legislating zoning restrictions *should* have superior access to facts and justifications for the zoning exclusion. * * * " (Emphasis supplied.)

If the zoning authority fails to offer such rebuttal evidence, plaintiff after satisfying the burdens of establishing a prima facie case is entitled to judgment.

The type of evidence which will satisfy the municipalities' burden was defined by Judge Gillis as:

> " 'clear, positive, and credible evidence' that would challenge either the existence of a 'favored' status of the proposed use, the suitability of the site for such a use, the degree of exclusion, or the legal conclusion of invalidity."

Several factors upon which the governmental unit

may rely to satisfy its burden are traffic patterns, availability of water supply and sewage disposal systems, availability of police and fire protection, and a comparison with surrounding uses. See *Cohen v Canton Twp,* 38 Mich App 680 (1972). Believing that these principles place the parties' respective rights and duties in the proper perspective, I find the criticism of *Bristow* unfounded.

Part of my disagreement with the majority is directed toward their criticism of the emphasis *Bristow* placed upon the existence of a master plan. *Green v Lima Twp,* 40 Mich App 655 (1972), in which this writer participated, emphasized the veritable necessity for governmental units to properly adopt carefully prepared, well-reasoned, and flexible master plans. The caveat that our courts will accord special weight only to plans which are noticeably implemented provides an unambiguous encouragement for master plan development. Only our strict adherence to this principle will insure progress toward the rationale and just zoning control *Bristow* intended.

The present case serves as an unfortunate example of the evils occasioned by local zoning authorities' disregard of *Bristow.* Only a single parcel of land in Shelby Township is zoned for the construction of mobile home parks. This parcel is not being developed for mobile homes and its current use for agricultural purposes belies such use. Although Shelby Township has recently enacted an ordinance permitting mobile home use, the significance of its conduct lies in the fact that its zoning map has not been similarly amended to designate appropriate areas for mobile home development. Defendant is merely paying lip service to the proposed use by accompanying a single unused parcel designated for mobile homes with an ordi-

nance which finally recognizes mobile homes as a legitimate use.

Upon these facts I would characterize defendant's conduct as discrimination by design and find that plaintiff has established a prima facie case. Defendant's failure to offer any evidence justifying its exclusion of the proposed use constitutes a failure to satisfy its burden of going forward, and I would reverse.

O'HARA, J. *(concurring in result).* I agree with the finding of the trial judge that the ordinance is not arbitrary, capricious, unreasonable, or confiscatory as to the land in question.

I too vote to affirm.